**Robert Lee CLAY, Petitioner-Appellant,**

v.

**J. D. HENDERSON, et al.,**
**Respondents-Appellees.**

**No. 74–3841.**

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1975.

George Sihler Branch (Court appointed), William B. Fryer, Atlanta, Ga., for petitioner-appellant.

John W. Stokes, U. S. Atty., J. Robert Cooper, Asst. U. S. Atty., Atlanta, Ga., for respondents-appellees.

Before BELL, THORNBERRY and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant Robert Lee Clay appeals the denial by the United States District Court for the Northern District of Georgia of his petition for habeas corpus relief pursuant to 28 U.S.C. § 2241. Relevant facts are as follows: appellant Clay was sentenced on July 28, 1967 to consecutive five and two year terms of imprisonment for violating 18 U.S.C. § 2314 (Interstate Transportation of Forged Securities) and 18 U.S.C. § 751 (Escape). Credited with 130 days of presentence imprisonment his seven year term would have expired on March 19, 1974. Instead, Clay was paroled on October 9, 1970 and surrendered to Virginia correctional authorities, who had issued a detainer for him to serve a state sentence. The State of Virginia paroled Clay on January 22, 1973 and on October 11, 1973 a federal parole violator's warrant was issued upon information of numerous federal parole violations committed since he had been released from incarceration in Virginia. Upon revocation of his federal parole, Clay was reincarcerated in the federal penitentiary in Atlanta to complete the 1257 days remaining to be served on his federal sentence when he was paroled in 1970; his new maximum term expiration date was computed to be March 23, 1977.

Appellant Clay argues that his removal from federal to state prison was a "transfer," pursuant to 18 U.S.C. § 4082(b); appellee contends that this removal was a "parole" under 18 U.S.C. § 4203. A novel question for this court, our classification of Clay's release will determine whether or not the Parole Board had jurisdiction over him in October, 1973, sufficient to justify reincarceration for "parole" violations.

If Clay's release by federal authorities in 1970 were a parole, as appellees contend, he would have been subject to the Board of Parole's jurisdiction until the expiration of the maximum term for which he was sentenced—March 19, 1974. § 4203(a). Accordingly, his parole violations in October of 1973 would have subjected him to revocation of his 1970 parole by the Board. If, however, Clay's release in 1970 were classified as a transfer under § 4082, his time served in the Virginia State Prison—from October, 1970, to January, 1973—would have counted as time served on his federal sentence and thereby would have allowed him to accrue good time on that sentence. 18 U.S.C. § 4163 provides for the "mandatory release" of a prisoner at the expiration of his term of sentence less the time deducted for good conduct. Accruing good time at the rate of eight days per month,[1] appellant computes his mandatory release date from his federal sentence to have been May 16, 1972. Thus, according to this "transfer" argument, when Clay was paroled by Virginia correctional authorities on January 22, 1973, the mandatory release date for his federal sentence—May 16, 1972—had already passed and, therefore, Clay should have been treated by federal authorities as a mandatory releasee, *not* a parolee.

In appellant Clay's case, the distinction between the post-release treatment of a parolee and that of a mandatory releasee are crucial. As noted

---

1. Section 4161, 18 U.S.C., provides in part:

   Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run, as follows:

   \*    \*    \*    \*    \*    \*

   Eight days for each month, if the sentence is not less than five years and less than ten years.

above, the Board of Parole has jurisdiction over a parolee until the expiration of his maximum term—here, March 19, 1974; Clay's parole violations in October, 1973 were well within this time period. A mandatory releasee, however, is subject to the Board of Parole's jurisdiction only until the expiration of his maximum term *less* one hundred and eighty (180) days. 18 U.S.C. § 4164.[2] Computation of Clay's maximum term—March 19, 1974—less 180 days would give the Board of Parole jurisdiction over Clay only until September 19, 1973. Thus, as a mandatory releasee, Clay could have been treated as a parolee and subject to reincarceration for parole violations only until September 19, 1973. Accordingly, the Board of Parole's jurisdiction over Clay would have already expired when the federal parole violator's warrant was issued on October 11, 1973 and his subsequent incarceration for parole violations would thereby have been improper.

■ In support of his contention that his release from federal prison constituted a "transfer," Clay argues that removal of an individual from one prison to another is conceptually at odds with the very essence of parole. Rather, he argues, the parole statute purports to allow a prisoner to "live and remain at liberty," § 4203, in society, thereby proving his ability to function as a law-abiding citizen. We find appellant's argument to be without merit.

First, Clay's release from federal prison in 1970 satisfied all the formal prerequisites for a parole. The decision to parole him was made after he had served almost exactly one-third of his seven year term, the one-third provision being a requirement of parole under 18 U.S.C. § 4202. Clay was paroled pursuant to a properly executed Certificate of Parole, issued by the United States Board of Paroles and signed by Clay, himself, who agreed to the conditions of his parole and to his recommitment to prison should he violate any of these conditions. Clay's Certificate of Parole stipulated that he was to reside within the Western District of North Carolina.[3] Instead, he was extradited from Atlanta, Georgia to Virginia to serve a state sentence. This court finds nothing improper, however, in Clay's removal to Virginia upon parole from the Atlanta Penitentiary. Indeed, the conditions of parole specified in Clay's Certificate of Parole contemplate the parolee's release to the custody of other authorities.[4] In addition, under the interstate agreement on detainers (Title 18, Appendix United States Code) federal correctional officials, as the holding authority, were required to notify a detaining authority of the forthcoming release of a prisoner. Finally, that Clay's release from federal prison is more properly characterized as a parole, rather than as a transfer, is indicated by the particular agency that handled the release. That is, Clay's release was handled solely by the Board of Parole; the Bureau of Prisons, a separate agency also under the authority of the Attorney General and in charge of administration of transfers under § 4082, was in no way involved. Because the procedural mechanics required for a transfer were not utilized in Clay's release from federal prison in 1970, it is obvious that the office of the Attorney General did not intend Clay's release to be considered as a transfer.

■ Appellant argues, however, that the failure of his 1970 release to

---

**2.** Section 4164, 18 U.S.C., provides in part:

A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days.

**3.** As to the place of parole, the Department of Parole somewhat contradicted the Certificate of Parole in a statement made in its Notice of Action that "Parole effective October 9, 1970, to the physical custody of the Virginia authorities only."

**4.** The Conditions of Parole state, in part:

(1) You shall go directly to the district shown on this Certificate of Parole (unless released to the custody of other authorities).

924

meet formal requirements for a transfer is not fatal. He contends that because this release amounted to no more than a transfer of himself from one jailer to another, it ought to be labeled and treated as such. In essence, appellant asks this court to interpret relevant statutes to mean that whenever a detainer from other correctional authorities lies against a prisoner, that prisoner cannot be paroled. According to this approach, if holding authorities wish to release the prisoner on what would otherwise be characterized as a parole, they must instead transfer the prisoner to the detaining authority, utilizing the procedures established for transfers. We find this interpretation to be neither required by a reading of the statutes nor favorable to the broad class of prisoners affected. It is well-established that the Board of Parole, absent arbitrary conduct or actions that result in a denial of constitutional rights, has absolute discretion in parole matters. *Tarlton v. Clark*, 441 F.2d 384 (5th Cir. 1971); *Thompkins v. U. S. Board of Parole*, 427 F.2d 222 (5th Cir. 1970); *Ott v. Ciccone*, 326 F.Supp. 609 (W.D.Mo.1970). Likewise, the Board of Prisons, through the Attorney General, possesses the absolute authority, absent a showing of abuse of discretion, to designate the place of a prisoner's confinement and to administer transfer matters. *Hogue v. United States*, 287 F.2d 99 (5th Cir. 1961), *cert. denied*, 368 U.S. 932, 82 S.Ct. 369, 7 L.Ed.2d 195; *United States v. Farmer*, 343 F.Supp. 955 (E.D.Tenn.1972). From our reading of the relevant statutes, we find it neither necessary nor prudent to intervene in the internal matters of these two agencies.

Our primary objection to appellant's argument, however, lies in the fact that his proposal would work to the disadvantage of most prisoners who are up for parole and who have detainers issued against them. Assume, for example, that appellant had ten years left to serve on his federal sentence when he was released in 1970. According to appellant's

argument, his release constituted a transfer to Virginia authorities. Therefore, not having accrued enough good time to warrant "mandatory release" upon his parole by Virginia authorities in 1973, appellant would have had to return to federal prison to complete his federal sentence. If all such releases are treated as paroles, however, the parolee does not have to return to federal prison upon release from the state prison, no matter how much of his sentence remained unserved when he was originally released by federal prison authorities. The only restriction attending the parolee is the requirement that he adhere to conditions of parole until the expiration of the maximum term for which he was sentenced; the mandatory release is likewise subject to parole conditions, but only until one hundred eighty days before his term expires.

In short, we cannot accept appellant Clay's contention that his classification as a parolee, instead of as a transferee, subjected him to unfair treatment by prison and parole authorities. Appellant could have been required to serve until the end of his federal term and then released to Virginia authorities to begin serving his state sentence. By paroling Clay in 1970, however, federal authorities enabled him to begin serving his state sentence earlier than anticipated. Clay signed the Certificate of Parole and accepted the conditions enumerated. Now, because the warrant for his parole violations happened to have been issued during the 180-day period prior to expiration of his sentence, he seeks reclassification as a mandatory releasee—a status that would allow him to utilize the 180-day grace period authorized by § 4164. The Board of Parole conferred a substantial benefit upon Clay by paroling him in 1970; he cannot now renounce that benefit to escape the consequences of his own unwillingness to adhere to parole conditions and to function as a law-abiding citizen.

Affirmed.