**Anthony J. GARAFOLA, Petitioner,**

v.

**G.C. WILKINSON, Warden, Respondent.**

**Civ. No. 82–0977.**

United States District Court,
M.D. Pennsylvania.

Feb. 2, 1983.

Anthony J. Garafola, pro se.

James W. Walker, Asst. U.S. Atty., Scranton, Pa., for respondent.

OPINION

MUIR, District Judge.

Petitioner Anthony J. Garafola, presently incarcerated at the Lewisburg Penitentiary, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on August 12, 1982. The $5.00 filing fee was paid on September 8, 1982. On September 10, 1982,

United States Magistrate Joseph F. Cimini issued a Rule to Show Cause. On November 12, 1982, the respondent filed an answer to the Rule to Show Cause and on November 26, 1982, Garafola filed a traverse to the answer. On December 30, 1982, Magistrate Cimini filed his report recommending that the petition for a writ of habeas corpus be denied. The period for filing exceptions to the Magistrate's Report ended on January 12, 1983. Garafola filed exceptions on January 18, 1983. Because the delay is slight and might well have resulted from Garafola's incarceration, the Court will consider Garafola's exceptions. The matter is now ripe for disposition by this Court.

Garafola was convicted in the United States District Court for the District of Massachusetts of a variety of offenses, including one count of conspiracy and eight counts of securities-related fraud on October 8, 1974. Garafola was sentenced to be incarcerated for a total of six years. Garafola was afforded his initial parole hearing on June 2, 1976. At that time, the Parole Commission learned that Garafola had a concurrent one-year to three-year New Jersey state sentence for assault and battery. Garafola was released by federal authorities on "parole" on August 19, 1976. Because there was an outstanding New Jersey state detainer on the state sentence, Garafola's release was to the custody of the New Jersey authorities. As of August 19, 1976, Garafola had a total of 1,452 days remaining to be served on his federal sentence and his full-term expiration date was August 10, 1980. Garafola was released by New Jersey authorities on parole on January 10, 1978. In 1980, Garafola was again arrested and subsequently convicted on March 18, 1980 of New Jersey state conspiracy-related charges. On April 14, 1980, Garafola was sentenced in New Jersey state court for conspiracy to a term of almost three years imprisonment.

As a result of the state conspiracy conviction and sentence in New Jersey, on April 23, 1980, a federal parole violator warrant was issued against Garafola. On September 24, 1981, Garafola's federal "parole" was revoked. Garafola was advised that none of the time he had spent on federal "parole" (i.e. since August 19, 1976) was to be credited and that the parole violator term would commence upon the termination of his New Jersey state incarceration for the conspiracy offense. The New Jersey incarceration ended on October 27, 1981. Garafola was directed by the Parole Commission to continue his federal sentence to expiration, for a total of 1,452 days from October 27, 1981.

In this habeas corpus petition, Garafola contends that the time he served in the New Jersey state prison system from August 19, 1976 until January 10, 1978 should be credited against the 1,452 days which remained on his federal sentence when he was released "on parole" on August 19, 1976. In his report, the Magistrate concluded that because Garafola was on "parole" and because violation of "parole" may properly result in denial of credit for all time served while on "parole", Garafola is not entitled to the relief sought. In the view of the Magistrate, the fact that Garafola, while on federal "parole," was incarcerated in the New Jersey state system rather than being "on the streets" has no legal consequence. *Clay v. Henderson,* 524 F.2d 921 (5th Cir.1975).

This Court does not agree. In the ordinary case where parole is revoked for a violation thereof the time spent on parole is not credited on the time remaining to be served on the federal sentence. Under pre-1976 law, it was clear that a parole violator could lose both good time credits and credit for time spent on conditional release where parole was revoked. *See* 18 U.S.C. § 4205 (1969), *modified by* Parole Commission and Reorganization Act of 1976, P.L. 94–233, § 2, March 15, 1976, 90 Stat. 222. ("The unexpired time of imprisonment of any [prisoner whose parole has been revoked] shall begin to run from the date he is returned to the custody of the Attorney General ... and the time the prisoner was on parole shall not diminish the time he was sentenced to serve"); *Coronado v. United States Board of Parole,* 540 F.2d 216, 218 (5th Cir.1976). *See also* 18 U.S.C. § 4207

(1969), *modified by* Parole Commission and Reorganization Act of 1976, P.L. 94–233, § 2, March 15, 1976, 90 Stat. 224 ("If . . . parole shall be revoked and the parole so terminated, the . . . prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced.") New sections 4213 and 4214 include no similar forfeiture provisions. 18 U.S.C. §§ 4213, 4214. Nonetheless, absent legislative indication to the contrary, this Court is of the opinion that the Parole Commission retains the right to require a parole violator to serve the entire remaining portion of his term of incarceration. *Lambert v. Warden, United States Penitentiary,* 591 F.2d 4, 8 (5th Cir.1979). *Cf. Patton v. Fenton,* 491 F.Supp. 156 (M.D.Pa. 1979) (Nealon, C.J.).

Release to a detainer is not, however, an ordinary circumstance of "parole." Indeed, calling such release "parole" is pure hyperbole and a gross twisting of the concept. Release on parole usually results in a termination of the prisoner's period of incarceration. The parolee lives in a community or other less intrusive setting under the supervision of appropriate authorities. *E.g.* 28 C.F.R. § 2.38. While the parolee is subject to a variety of "conditions of release," 28 C.F.R. § 2.40, he has substantial freedom to adjust to the non-prison environment.

■ The difference between "parole" to a detainer and ordinary parole is demonstrated by the existence of a separate statement of policy of the Parole Commission regarding parole to a detainer. 28 C.F.R. § 2.31. Furthermore, clearly, the same rules applicable to ordinary parole cannot apply to "parole" to a detainer. Among the express conditions of release are that a parolee shall not "associate with persons engaged in criminal activity. . .", 28 C.F.R. § 2.40(a)(5), and shall not "associate with persons who have a criminal record. . ." 28 C.F.R. § 2.40(a)(10). By definition, where a "parole" is to a detainer the "parolee" will probably be incarcerated in circumstances where he will be associating with persons with criminal records. Such association would, by ordinary parole standards, constitute a violation of the conditions of release. 28 C.F.R. § 2.40. Additional evidence of

the distinction between ordinary parole and "parole" to a detainer is that under Parole Commission regulations, once Garafola was "paroled" to a detainer to the physical custody of the New Jersey authorities, withdrawal of that detainer did not automatically result in Garafola's release. Indeed, the regulations require that "when such a detainer is withdrawn, the prisoner is not to be released unless and until the Commission makes a new order of parole." 28 C.F.R. § 2.32(a)(1). In essence, the Parole Commission is given unbridled discretion upon the inmate's release from state custody to consider the matter *de novo.* For all of these reasons, this Court is of the opinion that a "parole" to a detainer is not parole at all. Therefore, the Court must consider whether the forfeiture of credit provisions for revocation of ordinary parole should apply.

There is little case law on the question. The sole case which the parties cite addressing this issue is *Clay v. Henderson,* 524 F.2d 921 (5th Cir.1975), which was decided before the Parole Commission Reorganization Act of 1976. Furthermore, the Parole Commission's otherwise exhaustive regulations do not set forth a policy on the effect of "parole" to a detainer in this circumstance.

Had Garafola not been paroled on August 19, 1976 and, instead, had he been *transferred* to New Jersey authorities for the detainer, the time Garafola served in the New Jersey state prison system from August 19, 1976 to January 10, 1978 would be "credited" toward Garafola's ultimate federal release date. *Cf.* 18 U.S.C. § 3568 (credit must be given "for any days spent in custody in connection with the offense or acts for which sentence was imposed"); 18 U.S.C. § 4085; 28 C.F.R. § 527.30 (transfer of inmates to state agents for production on state writs). Were the Court to find that Garafola's "parole" to a state detainer does not result in the granting of "credit" for the time served in the state system, the absurd situation would result whereby Garafola was, in effect, *penalized* by being paroled because the concurrent state sentence would be converted to an add-on sentence by the "parole". This "penalty" resulting from parole is arbitrary and not

justified by the legislative history of the Parole Reorganization Act of 1976, the statute itself, or Parole Commission regulations. Furthermore, no holding in this Circuit dictates that result.

For all of the foregoing reasons, the Parole Commission will be directed to recompute Garafola's ultimate release date by granting Garafola credit for the time served in the New Jersey state prison system from August 19, 1976 to January 10, 1978.

Garafola also asserts that the time from March of 1980 (when he was convicted in New Jersey on conspiracy charges) to October of 1981 (when he was finally taken in federal custody as a parole violator) should be credited against the time remaining on his federal sentence. The Magistrate rejected this request for credit. Garafola apparently does not except to this conclusion in the Magistrate's Report. For the reasons stated at pages 11–13 of the Magistrate's Report, Garafola's request for credit on his federal sentence for the time from March of 1980 to October of 1981 will be denied. *See, e.g.,* 18 U.S.C. § 3568; *U.S. v. Perno,* 605 F.2d 432 (9th Cir.1979); *Polakoff v. U.S.,* 489 F.2d 727 (5th Cir.1974). *Cf. U.S. v. Campisi,* 622 F.2d 697 (3d Cir.1980).