**Anthony J. GARAFOLA, Appellee,**

v.

**G.C. WILKINSON, Warden.**

**G.C. Wilkinson, Appellant.**

**No. 83–3175.**

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1983.

Decided Nov. 15, 1983.

Rehearing and Rehearing In Banc Denied Dec. 9, 1983.

Certiorari Denied March 26, 1984. See 104 S.Ct. 1681.

Douglas B. Schoppert (argued), Lewisburg Prison Project, Lewisburg, Pa., for appellee.

David Dart Queen, U.S. Atty., James W. Walker, Asst. U.S. Atty., Scranton, Pa., Henry J. Sadowski (argued), Regional Counsel, U.S. Parole Commission, Philadelphia, Pa., for appellant.

Before ALDISERT and BECKER, Circuit Judges, and COHILL,* District Judge.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the question whether the United States Parole Commission acted within its statutory authority when it promulgated a rule under which a federal prisoner who has been paroled to a state detainer, upon subsequent conviction for a crime punishable by imprisonment, committed while subject to the jurisdiction of the Commission, can be denied credit in the calculation of his parole-violation term for the time that he was incarcerated in state prison pursuant to the state detainer. The case turns on whether a "parole to a state detainer" is a "parole" within the meaning of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–4218 (1976) ("Parole Act").

The district court held that a prisoner is "paroled" only when he is released into the community, that a parole to a state detainer was the equivalent of a transfer to state custody, and therefore that the time spent by appellee Anthony J. Garafola in state prison after being paroled to the state detainer must be credited towards satisfaction of his federal sentence. Because we hold that a "parole to a state detainer" made pursuant to section 2.32(a)(2) of the Parole Commission's regulations, see 28 C.F.R. §§ 2.1–2.60 (1982), is a "parole" within the meaning of the Parole Act, we reverse.

\* Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation.

## I.

On October 8, 1974, Garafola was sentenced in the United States District Court for the District of Massachusetts to a total regular adult term of six-years imprisonment on convictions of one count of conspiracy and eight counts of disposing of falsely made and forged securities in interstate commerce. On June 2, 1976, Garafola had his initial parole hearing. At this hearing, the Parole Commission was advised that Garafola had been convicted in New Jersey for assault and battery and had received a one- to three-year sentence, to run concurrently with his federal sentence. The Commission decided to parole Garafola "effective August 19, 1976 to the actual physical custody of the New Jersey authorities; however, if the New Jersey detainer is withdrawn, parole effective September 7, 1976, via Community Treatment Center."

On August 19, 1976, pursuant to this decision, Garafola was paroled from his six-year federal sentence to the New Jersey detainer; at that time 1452 days remained to be served on his federal sentence. On January 10, 1978, after 509 days in a New Jersey state prison, Garafola was released by the State of New Jersey from his one- to three-year state sentence, and he became subject to active supervision under his federal parole; on that date 943 days remained to be served on his federal parole.

On March 18, 1980, Garafola was convicted in a New Jersey state court of conspiracy. The criminal acts committed by Garafola that resulted in this conspiracy conviction occurred in September 1977, while Garafola was still in custody on his state sentence. On April 14, 1980, Garafola was sentenced to two years and eleven months imprisonment on this conspiracy conviction. On April 23, 1980, the Commission issued a parole violation warrant against Garafola, based upon his new conviction. This warrant was lodged as a detainer against Garafola with the New Jersey State prison authorities.

After conducting a hearing, the Commission decided, by notice of action dated September 24, 1981, to revoke Garafola's parole, to forfeit all time he had spent on parole, to begin his parole violation term on his release from state custody, and to deny him reparole on the parole violation term. The Commission found that August 19, 1976, was the date that Garafola was paroled from his federal sentence and thus computed the parole violation term to be 1452 days. On October 27, 1981, Garafola was released from his new state sentence, at which time the federal parole violation warrant was executed. The federal parole violation term of 1452 days began to run on that date.

On August 12, 1982, Garafola, acting *pro se*, petitioned in the District Court for the Middle District of Pennsylvania under 28 U.S.C. § 2241 (1976), for a writ of habeas corpus against his custodian George C. Wilkinson, Warden of United States Penitentiary, Lewisburg, Pennsylvania. Garafola requested credit towards the federal parole violation term for the time he had spent in custody pursuant to the state sentence to which he had been paroled in August 1976, and from which he was released on January 10, 1978.

On February 2, 1983, the district court granted Garafola's petition for a writ of habeas corpus. The district court held that the "parole to the state sentence" was not a "parole", and that therefore, the Commission could not deny a federal prisoner credit for time spent in state prison pursuant to a state detainer. The court ordered the Commission to credit Garafola for the time that he spent in state prison from August 19, 1976, to January 10, 1978. *Garafola v. Wilkinson,* 555 F.Supp. 1002 (M.D. Pa.1983).[1]

## II.

The Parole Commission has express statutory authority to revoke the parole of any parolee who is convicted of any new criminal offense punishable by imprisonment, and to order that that individual receive no credit towards time served from the date he was released on parole until he returns to federal custody following completion of any new sentence of incarceration. 18 U.S.C. § 4210(b)(2) (1976).[2] The term "parole" is not defined in the Parole Act;[3] however,

---

1. In its brief the Commission informs us that it has complied with the district court's order but reserves the right to void the credit if we reverse. The Commission has calculated a new full term release date for Garafola of May 26, 1984, and a new statutory mandatory release date (i.e., his full term less good-time deductions) of September 21, 1983. Thus presumably Garafola was released on September 21, 1983 "as if released on parole." 18 U.S.C. § 4164 (1976). Assuming that Garafola has committed no new parole violations this period of new parole will expire one hundred and eighty days prior to May 26, 1984 (i.e., Nov. 27, 1983). *Id.* The Commission's good-faith compliance with the district court's order does not render this case moot. *See U.S. Ex Rel. Forman v. McCall,* 709 F.2d 852, 855–56 n. 9 (3d Cir.1983); *Campbell v. U.S. Parole Comm'n,* 704 F.2d 106, 109 n. 2 (3d Cir.1983).

2. The subsection reads:
   (2) in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), *whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense,* but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.
   18 U.S.C. § 4210(b)(2) (1976) (emphasis added); *see* 28 C.F.R. §§ 2.47(d)(2) & 2.52(c)(2); H.Conf.R. No. 838, 94th Cong., 2d Sess. 19, *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 351, 364; *United States v. Newton,* 698 F.2d 770 (5th Cir.1983); *Harris v. Day,* 649 F.2d 755, 758–60 (10th Cir.1981). *See also* 28 C.F.R. § 2.10.

3. Appellee points to the definition of "parole" in 18 U.S.C. § 4101(f) (Supp. II 1978) ("parole" is "any form of release of an offender from imprisonment to the community") as support for his conclusion that "parole" requires that the prisoner must be released to the community, not to another prison. However, § 4101(f) is part of chapter 306 ("Transfer to or from Foreign Countries") and is limited by its ex-

this omission is not surprising given that the subject of the Parole Act is parole, and Congress clearly intended to define that term by reference to the structure and substance of the entire Act. Nor is there any express definition in the regulations promulgated by the Parole Commission pursuant to its express statutory authority to promulgate regulations to implement the goals of the Parole Act. However, the Commission has promulgated regulations that have the effect of making "parole to a state detainer" one form of "parole."[4] The real question in this case then is whether these regulations are valid.

If we determine that the regulations are valid, then Garafola was "paroled" when he was "paroled to the state detainer" on Au-

gust 19, 1976, and upon his subsequent conviction and revocation of his parole, he is liable to serve the full amount of time that remained on his federal sentence calculated from the day he was paroled (i.e., 1452 days). If, however, the regulations are invalid, then Garafola was not a "parolee" while he was in state prison, and the Commission had no authority to deny credit to Garafola for the time he spent in state prison.[5]

### III.

■ At the threshold, we note that Congress has committed substantive parole determinations to the absolute discretion of the Parole Commission.[6] This statutory restriction on judicial review does not pre-

---

press terms to that chapter ("§ 4101 Definitions. As used in this chapter the term—. . . (f) 'Parole' means . . . ."). The Parole Act (chapter 311) has its own list of definitions in § 4201, and "parole" is not included.

**4.** The Parole Commission has express statutory authority to promulgate regulations to implement the Parole Act. 18 U.S.C. § 4203(a)(1) (1976). Pursuant to this authority the Commission has promulgated regulations at 28 C.F.R. §§ 2.1–2.60. Although the regulations contain a section of definitions (section 2.1), the term "parole" is not defined. The regulations, however, do address parole where a detainer has been lodged against a federal prisoner. 28 C.F.R. § 2.32(c) (1982) ("As used in this section 'parole to a detainer' means release to the 'physical custody' of the authorities who have lodged the detainer."). First, the regulations provide that the existence of a detainer, by itself, is not sufficient justification to deny parole where a prisoner otherwise meets the parole criteria. 28 C.F.R. § 2.31(a) (1982). Second, the regulations provide for two types of parole where a detainer is outstanding: parole to the detaining authority with the proviso that the prisoner be returned to the Federal authorities once the detainer is withdrawn; and parole to the detaining authorities, but once the detainer is withdrawn, parole to the community. 28 C.F.R. § 2.32(a)(1) & (2) (1982). Plainly then, the Parole Commission has promulgated regulations that make a "parole to a detainer" one form of "parole". Thus, whatever the "ultimate essence" of parole is, by dint of these regulations "parole" includes "parole to a state detainer."

**5.** The typical context in which the problem of credit for time served in state prison will arise, is where a prisoner is paroled to a state detain-

er, serves his time in state prison, and is released to active supervision under his federal parole and then, while free but still on federal parole, the parolee commits some new crime. In this situation the Commission clearly has statutory authority to revoke the parole and require the parolee to serve his entire term, calculated at least from the day he was released from state prison. The only issue in this hypothesized case would be whether the parolee could be required to serve time calculated from the date he was released from federal prison; that is, whether the time spent in state prison was as a federal parolee (in which case denial of credit is permissible) or as a federal prisoner (in which case denial of credit is not permissible).

Garafola's situation is more problematic because he committed his new crime while in state prison. If the Commission's regulations are invalid, then Garafola was not a parolee while he was in state prison. The Parole Commission only has authority to deny credit for time spent on parole where the parolee *commits* a crime *while on parole.* 18 U.S.C. § 4210(b)(2) (1976). Thus, in Garafola's case, assuming the regulations are invalid, the Commission not only cannot deny credit for time spent in state prison because Garafola was not then on parole, but also the Commission cannot deny credit for the time after Garafola was released from state prison because, even supposing he became a federal parolee upon his release from state prison, he committed no crime while on parole.

**6.** 18 U.S.C. § 4218(d) (1976); *see Portley v. Grossman,* 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980); *Garcia v. Neagle,* 660 F.2d 983, 988 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982).

clude the federal courts, however, from considering a claim that the guidelines for exercising discretion, as promulgated and applied, violate the intent and directives of the Parole Act. "Such an inquiry into the *legality* of agency action, as opposed to its appropriateness within legal bounds, is uniquely appropriate for judicial determination." *Garcia v. Neagle,* 660 F.2d 983, 988 (4th Cir.1981) (quoting *Scanwell Laboratories, Inc. v. Schaffer,* 424 F.2d 859, 875 (D.C.Cir.1970)), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982); *see* 5 U.S.C. § 706 (1976). If, therefore, the Commission's regulations that make a "parole to a detainer" a form of "parole" are outside the statutory mandate granted to the Parole Commission by Congress in the Parole Act, then the regulations are invalid, and the Commission may not deny Garafola credit for the time he served in state prison. The district court in effect found that the Commission's regulations equating "parole to a detainer" with "parole" violated the statutory mandate of the Parole Act.[7] This determination is in turn subject to review by this court for error of law. *Garcia,* 660 F.2d at 989.

The district court pointed to three factors that persuaded it that the Parole Commission's regulations treating a "parole to a detainer" as a "parole" exceeded the Commission's statutory mandate. First, the court stated its view that "parole" necessarily requires release to the community, not to another prison authority.

7. The district court's opinion is actually not clear as to what standard of review it applied, or indeed, as to what the precise rationale for its holding was. To the extent that the district court's opinion is bottomed on the notion that Garafola was "transferred" and not "paroled" to state prison, we note our disagreement. Exclusive authority to designate the place of confinement for a federal prisoner and to administer transfers is vested by statute in the Attorney General, through the Bureau of Prisons. 18 U.S.C. § 4082 (1976). Yet Garafola was released to the detainer not by the Bureau of Prisons or the Attorney General, but by action of the Parole Commission, which has exclusive statutory authority to grant paroles but no authority to make transfers. *See Clay v. Henderson,* 524 F.2d 921 (5th Cir.1975), *cert. denied,*

Release to a detainer is not, however, an ordinary circumstance of "parole." Indeed calling such release "parole" is pure hyperbole and a gross twisting of the concept. Release on parole usually results in termination of the prisoner's period of incarceration. The parolee lives in a community or other less intrusive setting under supervision of appropriate authorities .... While the parolee is subject to a variety of "conditions of release" ... he has substantial freedom to adjust to the non-prison environment.

555 F.Supp. at 1004. We disagree.

Congress has charged the Parole Commission with making the determination whether a federal prisoner should be paroled. In Garafola's case the Commission applied the appropriate federal criteria and determined that he should be. In separate legislation Congress has also charged the Commission with cooperating with state authorities by honoring state detainers lodged against federal prisoners. *See* Interstate Agreement on Detainers Act, 18 U.S.C. Appendix (1976). In paroling Garafola to the state detainer the Parole Commission honored both of these Congressional directives. A state prison authority to which a federal prisoner has been paroled must make an entirely separate and independent judgment whether, under state criteria, the prisoner is entitled to state parole. The characterization of the federal action does not depend on actions taken by state authorities.[8] Where a prisoner has violated both

425 U.S. 995, 96 S.Ct. 2210, 48 L.Ed.2d 820 (1976) (decided under pre-1976 Parole Act).

8. Certainly, if a prisoner is paroled to the community and an hour later the state authorities arrest him on the street, and require him to serve out the remainder of a pending concurrent state sentence, there could be no doubt that the federal action was a parole. We are unable to conceive, and counsel for the appellee was unable at oral argument to suggest, any principled distinction between this hypothetical and Garafola's case. The mere fact that the federal and state authorities, motivated by considerations of comity, cooperate with each other through the detainer mechanism—thereby eliminating the hour of "street time" and the consequent administrative burden of recaptur-

state and federal law and is convicted by both forums, he has brought down upon himself the possibility of being paroled from federal prison to state prison; and there is nothing about a "parole to a state detainer" that inherently contradicts the notion of "parole". Moreover, in most cases, federal prisoners who find themselves subject to a state concurrent sentence will prefer a regime in which they can legitimately be paroled to a state detainer; a rule to the contrary would compel federal authorities to deny parole until termination of the state's concurrent sentence and thus eliminate the possibility of a shorter overall period of incarceration that might otherwise flow from federal parole followed by state parole. *See Clay v. Henderson,* 524 F.2d 921, 924 (5th Cir.1975), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2210, 48 L.Ed.2d 820 (1976) (decided under pre-1976 Parole Act).

The second factor relied on by the district court is that the Parole Commission's own regulations place certain restrictions on a parolee that are inconsistent with incarceration in state prison. For example, one of the express conditions of release is that a parolee shall not "associate with persons who have a criminal record," 28 C.F.R. § 240(a)(10) (1982). But, by paroling Garafola to the New Jersey detainer, the Commission obviously suspended this regulation and gave its permission for Garafola to associate with other prisoners to the extent required by his state sentence. *See* 18 U.S.C. § 4203(b) (1976) ("The Commission,

by majority vote, and pursuant to the procedures set out in this chapter, shall have the power to ... impose reasonable conditions on an order granting parole ...."); *see also Arciniega v. Freeman,* 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971).

Finally, the district court pointed to the fact that, if a prisoner is paroled to a state detainer under section 2.32(a)(1) of the Commission's regulations, once that detainer is withdrawn the prisoner is required to be returned to federal prison and is not to be released unless and until the Commission makes a new order of parole. 28 C.F.R. § 2.32(a)(1) (1982).[9] The district court reasoned that, where the existence of a state detainer is one factor in favor of federal parole, and where withdrawal of that detainer results not in release to the community, but rather in automatic reincarceration in federal prison and reconsideration of the parole question *de novo,* the Parole Commission must credit the prisoner with the time spent in the state prison towards satisfaction of his federal sentence.

Whatever the merits of this argument, it is not relevant here. On this appeal both Garafola and the Parole Commission agree that Garafola was not paroled under 28 C.F.R. § 2.32(a)(1) (1982), but under 28 C.F.R. § 2.32(a)(2) (1982).[10] Under this latter section the prisoner is paroled to the state detainer, but once the detainer is withdrawn, the prisoner is paroled to the community.[11] Thus there was an actual

ing paroled prisoners—is not sufficient to make the federal action not a parole.

9. The regulation states:
(1) Parole to the actual physical custody of the detaining authorities only. In this event, release is not to be effected except to the detainer. When such a detainer is withdrawn, the prisoner is not to be released unless and until the Commission makes a new order of parole.

10. The regulation states:
(2) Parole to the actual physical custody of the detaining authorities or an approved plan. In this event, release is to be effected regardless of whether the detaining officials take the prisoner into custody, providing there is an acceptable plan for community supervision.

11. Garafola was paroled "effective August 19, 1976 to the actual physical custody of the New Jersey authorities; however, if the detainer is withdrawn, parole effective September 7, 1976 via Community Treatment Center." Notice of Action of Parole Commission, at 1 (June 17, 1976).

If the Parole Commission had timely informed the district court that Garafola's parole was pursuant to § 2.32(a)(2) instead of § 2.32(a)(1), we doubt that the district court would have ordered the Commission to credit Garafola with the time he spent in state prison. Indeed, if Garafola had in fact been paroled pursuant to § 2.32(a)(1), it would present a very different case than a parole pursuant to § 2.32(a)(2). Under a § 2.32(a)(2) parole, the prisoner is not subject to reincarceration in federal prison unless he violates a condition of his parole.

and binding determination by the Parole Commission to parole Garafola from federal prison.

### IV.

In sum, we hold that the parole of a federal prisoner to a state detainer pursuant to 28 C.F.R. § 2.32(a)(2) (1982) is in all respects a "parole" within the meaning of the Parole Act. None of the factors cited by the district court impel the conclusion that the Parole Commission's regulations are outside the statutory mandate of the Parole Act; nor can we think of any other reason why they might be invalid. We therefore conclude that these regulations are within the province of the Parole Act and that they are valid. Thus, upon revocation of Garafola's federal parole because of the subsequent state conviction, he was liable to serve the full amount of time remaining on his federal sentence on the date he was paroled from federal prison (i.e., 1452 days). The judgment of the district court will therefore be reversed.