UNITED STATES of America, ex rel.
William STANBRIDGE,
Reg. # 79750–158, Petitioner,

v.

Michael QUINLAN, Warden, Otisville
Federal Correctional Institution,
Respondent.

No. 83 Civ. 6469(MEL).

United States District Court,
S.D. New York.

Oct. 26, 1984.

Donald H. Zuckerman, Pound Ridge, N.Y., for petitioner.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for respondent; Denny Chin, Asst. U.S. Atty., New York City, of counsel.

LASKER, District Judge.

Petitioner William Stanbridge moves for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (1982) on the grounds that his parole was wrongfully revoked and that his sentence has been erroneously calculated, resulting in continuing imprisonment beyond his proper release date. The petition is denied.

## I.

In 1974, while on state parole from sentences imposed in 1962, Stanbridge was convicted of conspiracy to distribute narcotics and sentenced to seven years in federal custody. He was paroled to a state detainer on September 29, 1976 and spent 82 days in state custody for violation of his state parole due to the 1974 conviction. He was released from state custody in December, 1976 and remained on both federal and state parole until his August, 1979 arrest described below.

On July 8, 1979, Stanbridge was arrested on a federal narcotics charge. While on bail, he was arrested by the state authorities on August 29, 1979 for criminal possession of a deadly weapon. Stanbridge was ultimately acquitted of this charge but the weapons arrest nevertheless caused him to remain in state custody from his arrest in August of 1979 until April 15, 1983 for violation of state parole on the 1962 sentence.[1]

On July 2, 1980, Stanbridge pled guilty to conspiracy to distribute narcotics in violation of 21 U.S.C. § 841 (1982) in connection with the July 1979 arrest and he was sentenced to eighteen months to be served consecutively to the state sentence.

On November 29, 1979, the United States Parole Commission ("Commission") issued a parole violator warrant citing the August, 1979 weapons arrest as grounds for revocation of parole from the 1974 sentence. The warrant was supplemented in October of 1980 to add the narcotics conviction as grounds for revocation.

A federal parole revocation hearing was held on November 16, 1982 at which Stanbridge was represented by retained counsel and several witnesses appeared on his behalf. The parole hearing officer recommended revocation based solely upon the 1980 narcotics conviction.

On March 2, 1983, the Commission issued a Notice of Action to Stanbridge which stated that his parole was revoked and required that he serve the remainder of his 1974 sentence (1506 days) after his eighteen month 1980 sentence was completed. No credit was given for time spent on parole prior to the 1979 arrest, nor was credit given for time spent in state custody on state charges while Stanbridge was on federal parole.

Stanbridge's counsel wrote to both the hearing officer and the United States Parole Commissioner immediately after the parole revocation hearing to assert that the conduct of the hearing violated due process. In a letter dated March 4, 1983, the Commission answered some of the attorney's arguments and invited him to submit any additional mitigating information which he felt had not been presented at the hearing. Petitioner's attorney responded by letter of March 31, 1983, in which he declined to submit additional information, repeated his due process objections, and requested that the letter be deemed a Notice of Appeal of the revocation.

On April 15, 1983, Stanbridge was released from state custody to federal custody to serve his remaining sentences.

## II.

Petitioner argues: (1) that he has been improperly denied credit (a) on his 1974 sentence for the time spent in state custody and (b) for street time; (2) that the supplement to the parole violator warrant was improperly issued thereby invalidating the revocation of parole; and (3) that the parole revocation hearing was invalid for failure to follow minimum standards of due process.

██ Although Stanbridge failed to exhaust the administrative appeal procedures available under 28 C.F.R. § 2.25–.27 (1984), the government conceded at oral argument that the doctrine of exhaustion is not applicable in a case such as this in which the petitioner's claims involve questions of

---

1. The state parole violation determination relating to the weapons arrest was upheld by the New York Court of Appeals. *Stanbridge v.* *Hammock,* 55 N.Y.2d 661, 431 N.E.2d 290, 446 N.Y.S.2d 929 (1981).

statutory interpretation of first impression in this circuit.[2]

### (1) *Credit for time spent in state custody and on parole prior to the 1979 arrest*

Stanbridge relies upon the terms of 18 U.S.C. § 3568 (1982)[3] to argue that he is entitled to credit on his 1974 federal sentence for the approximately 44 months (August, 1979 to April, 1983) spent in state custody for violation of state parole on the weapons arrest.

■ . This reliance is misplaced; § 3568 provides that credit shall be given for "any days spent in custody in connection with the offense or acts for which sentence is imposed." 18 U.S.C. § 3568 (1982). This provision does not provide credit for time spent in state custody for a separate and distinct offense unrelated to the offense or acts for which the federal sentence is imposed. *Sherbicki v. United States*, 366 F.Supp. 1290, 1293 (S.D.N.Y.1973) (time spent in state custody on assault charges not credited against federal narcotics sentence).

■ Stanbridge's federal sentences were imposed for narcotics convictions in 1974 and in 1980; his time spent in state custody related to his 1962 state sentences and the 1979 arms arrest as a violation of parole. He is therefore not entitled to federal credit for the time spent in state custody.

Stanbridge also argues that 18 U.S.C. § 4210(b)(2) (1982)[4] entitles him to credit for the approximately 34 months from his 1976 release from state to federal custody until his July, 1979 narcotics arrest. He bases this contention on two propositions: (1) that § 4210(b)(2), which authorizes revocation of parole for conviction of an offense committed while on parole, does not authorize the forfeiture of his street time (from his December, 1976 release on state and federal parole until his July, 1979 narcotics arrest); and (2) the § 4210(b)(2) forfeiture provision does not apply to time spent in state custody when the release on federal parole is pursuant to state detainer and the

**2.** Petitioner's claim involves interpretation of the forfeiture provisions contained in the Parole Commission and Reorganization Act of 1976, 18 U.S.C. § 4210(b)(2) (1982). A prisoner contesting a Commission order revoking parole must ordinarily exhaust available administrative remedies as a prerequisite to habeas relief. *Guida v. Nelson*, 603 F.2d 261, 262 (2d Cir.1979); *Carmel v. Thomas*, 510 F.Supp. 784, 788 (S.D.N.Y. 1981). However, failure to exhaust administrative relief procedures will not result in dismissal where the appeal to the court is based upon bona fide questions of statutory interpretation as these matters lie outside the expertise of the particular administrative body and are properly the subject of judicial review. *See McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

**3.** 18 U.S.C. § 3568 (1982) reads in pertinent part as follows:

The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence. The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed. As used in this section, the term 'offense' means any criminal offense, other than an

offense triable by court-martial, military commission, provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress.
*Id.*

**4.** Section 4210(b)(2) reads as follows:
(b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that—
(2) in the case of a parolee who has been convicted of a Federal, State or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.
18 U.S.C. § 4210(b)(2) (1982).

parolee goes immediately into state custody (in this case, the 82 days from his September, 1976 federal release on parole to a state detainer until his December, 1976 release from state custody on parole).

Stanbridge argues that both the plain meaning of the subsection and its legislative history do not authorize the forfeiture of street time. He states that time spent on parole is "time ... the parolee has previously served in connection with the offense" within the meaning of the subsection. He also contends that the omission of express street time forfeiture provisions in the 1976 Act, which were contained in the 1948 Act before its amendment,[5] reflects Congress' intent that street time is not subject to forfeiture under the Act as amended.

Notwithstanding petitioner's argument, every court confronted with this question has concluded that § 4210(b)(2) does authorize forfeiture of street time upon conviction of a new offense while on parole, despite the lack of any express street time forfeiture provision in the amended act itself. *See United States v. Newton,* 698 F.2d 770, 772 (5th Cir.1983); *Harris v. Day,* 649 F.2d 755, 758–60 (10th Cir.1981); *Frick v. Quinlan,* 631 F.2d 37, 39 (5th Cir.1980); *Lambert v. Warden,* 591 F.2d 4, 8 (5th Cir.1979); *United States ex rel. Del Genio v. United States Bureau of Prisons,* 644 F.2d 585, 586–88 (7th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 870, 66 L.Ed.2d 808 (1981); *Wilkerson v. United States Board of Parole,* 606 F.2d 750, 751 (7th Cir.1979); *see, also, Booze v. Thomas,* 500 F.Supp. 327, 329 (S.D.N.Y. 1980) (dictum).

Moreover, § 4210(b)(2) also states that "the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served *at the time of parole* shall run concurrently or consecutively with the sentence imposed for the new offense ...." 18 U.S.C. § 4210(b)(2) (1982) (emphasis added). This language is evidence of an intent that the unexpired term begin to run upon the release on parole, and not upon the commission of the offense for which parole is revoked. *See United States v. Newton, supra,* 698 F.2d at 772 (parole violator forfeits his street time upon conviction of a new offense subsequent to his release on parole).

Moreover, the legislative history of § 4210(b)(2) does not support petitioner's argument. The House Conference Report, referring to this subsection, states:

"This subsection also provides that an individual whose parole has been revoked upon conviction of any new criminal offense that is punishable by a term of detention, incarceration or imprisonment in any penal institution shall receive no credit for service of his sentence from the day he is released on parole until he either returns to federal custody following completion of any sentence or incarceration or upon the Commission determining that the sentence run concurrently with any new sentence that may have been imposed, pursuant to Section 4214(b) or (c) of this Act."

Joint Explanatory Statement of the Committee of Conference, H.Conf.Rep. No. 838, 94th Cong., 2d Sess. 32 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 335, 351, 364. *See also United States v. Newton, supra,* 698 F.2d at 772. The Commission has issued regulations in accordance with this interpretation.[6]

---

**5.** Former § 4205 reads as follows:

§ 4205. Retaking parole violator under warrant; time to service undiminished

A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve.

18 U.S.C. § 4205 (1970) (repealed as part of the general revisions enacted by the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–18 (1982)).

**6.** The Commission has issued the following regulation

■ We therefore conclude that § 4210(b)(2) does authorize the forfeiture of street time upon conviction of an offense while on parole.

Stanbridge next contends that § 4210(b)(2), even if it does authorize the forfeiture of street time, does not allow forfeiture of time spent in state custody when the parolee is released on federal parole directly to the state authorities on a state detainer. He argues that release on a detainer is not "release on parole" within the meaning of the Parole Act,[7] and that he is therefore entitled to credit for the 82 days spent in state custody from September to December, 1976.

The term "parole" is not expressly defined in the Parole Act. The Commission, however, has promulgated regulations which define *"parole* to a detainer" as "release to the 'physical custody' of the authorities who have lodged the detainer." 28 C.F.R. § 2.32(c) (1984) (emphasis added).

■ Stanbridge's argument ignores the dual sovereignty principle: as separate and distinct sovereigns, the state and federal governments each has the right to define offenses and impose sentences in the exercise of their independent sovereignty. *Abbate v. United States,* 359 U.S. 187, 194, 79 S.Ct. 666, 670, 3 L.Ed.2d 729 (1959) *(citing, United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922)). As a result, the federal parolee in state prison fulfills two separate obligations, each owed independently to the state or federal government. *See Garafola v. Wilkinson,* 721 F.2d 420, 424–25 (3rd Cir.1983) (holding that parole to a state detainer is in all respects parole within the meaning of the Parole Act. *Id.* at 426). To give a federal parolee federal sentence credit for his time spent in state custody on unrelated charges

would effectively ignore the dual sovereignty concept. *See id.* at 424–25.

■ Accordingly, we hold that release on federal parole to a state detainer is release on parole within the meaning of the Parole Act. Stanbridge is not entitled to credit for the 82 days in state custody.

## (2) *Supplementation of the Parole Revocation Warrant*

■ Stanbridge's contention that his parole revocation is invalid because the revocation warrant was improperly supplemented is without merit. A supplement to an existing warrant issues when the Commission discovers additional grounds for revocation of parole. Its sole purpose is to give the parolee notice of the new charges. Here, the supplement merely cited the 1980 narcotics conviction as the additional ground for revocation.

■ Stanbridge maintains that the supplement was improper because it was not accompanied by a Notice of Action advising him of his rights of appeal. However, there is no right of appeal to a supplement, since it merely cites additional charges. The parolee may rebut these charges at his hearing. The original warrant advises the parolee of his procedural rights relating to a hearing. Stanbridge received copies of both the original warrant and its supplement and therefore had notice of all charges and of his right to rebut these charges. Accordingly, we conclude that the supplement was properly issued.

## (3) *Conduct of the Parole Revocation Hearing*

Stanbridge argues that the parole revocation hearing is invalid because it failed to comply with the minimum due process requirements set forth in *Morrissey v. Brew-*

---

If the parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by a term of imprisonment, forfeiture of the time from the date of such release to the date of execution of the warrant shall be ordered, and such time shall not be credited to service of the sentence....

28 C.F.R. § 2.52(c)(2) (1984).

**7.** Petitioner relies upon *Garafola v. Wilkinson,* 555 F.Supp. 1002 (M.D.Pa.1983), which held that release to a detainer is not release on parole. *Garafola* has since been reversed. *See id.,* 721 F.2d 420 (3d Cir.1983).

*er,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Stanbridge argues that the hearing officer was not "neutral and detached" as required by *Morrissey,* and that the officer prevented Stanbridge's counsel from effectively presenting mitigating material on Stanbridge's behalf.

Specifically, Stanbridge objects to: (1) the taking of unsworn testimony; (2) undue restriction upon counsel's participation at the hearing through repeated interruptions by the hearing officer and by denial of counsel's right to summation; and (3) alleged repeated stopping of the tape recording of the hearing by the hearing officer which prevented counsel from properly preserving issues for appellate review.[8]

 After listening to the tape recording of the hearing, we are satisfied that the hearing officer was neutral and detached within the meaning of *Morrissey v. Brewer, supra.* Although counsel was interrupted while questioning witnesses, in each instance he was permitted to comment and to question the witnesses after the hearing officer had completed questioning. Moreover, the hearing officer questioned all witnesses in a neutral and impartial manner, eliciting information to aid him in predicting whether or not Stanbridge could safely remain on parole. The admission of unsworn testimony did not prejudice Stanbridge, since the witnesses that appeared did so voluntarily and in Stanbridge's behalf. The hearing officer's recommendation to revoke parole was a rational exercise of his discretion after a full and fair hearing.

Nor did the conduct of the hearing violate Stanbridge's right to due process of law. The Supreme Court, in *Morrissey v. Brewer, supra,* held that due process, in the case of a final parole revocation hearing, requires the following elements:

(a) written notice of the claimed violations of parole; (b) disclosure to the pa-

rolee of evidence against him (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.,* 408 U.S. at 489, 92 S.Ct. at 2604. In *Gagnon v. Scarpelli, supra,* the Court held that, in certain individual cases, due process may also require that the state provide counsel to indigent probationers or parolees. *Id.,* 411 U.S. at 790, 93 S.Ct. at 1763.

In establishing due process requirements at final parole revocation hearings, the Court distinguished such events from criminal proceedings. A revocation hearing is not strictly adverserial; the state is represented by a parole officer rather than a prosecutor; formal procedures and rules of evidence do not apply; the members of the hearing body are familiar with the problems and practices of parole. *Id.* at 789, 93 S.Ct. at 1763.

In articulating the informal and non-adverserial nature of these hearings, and in denying the parolee an absolute right to counsel, the Supreme Court has indicated that certain procedural safeguards, such as the taking of sworn testimony or counsel's right to summation, are within the discretion of the hearing officer, so long as he remains neutral and detached. *See id.* at 787–89, 93 S.Ct. at 1762–63.

 Were we writing on a clean slate, we might be disposed to require that witnesses be sworn as a matter of course, and that, where counsel is present, he be permitted a reasonable right of summation. Procedural safeguards such as these can help guarantee a fair hearing with minimal

---

8. Stanbridge also contends that the hearing officer failed to consider that his 1980 plea was *nolo contendere.* This is irrelevant as Stan-

bridge pled guilty pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); the plea was not *nolo contendere.*

interference with the informality and non-adverserial aspects of the hearing. However, as a matter of law, due process does not dictate such procedures, *see Morrissey v. Brewer, supra,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484; *Gagnon v. Scarpelli, supra,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656; nor, on the facts of this case, were petitioner's due process rights infringed in any way by the conduct of the hearing in question.

We therefore conclude that Stanbridge's parole revocation hearing complied with the minimum requirements of due process.

The petition for a writ of habeas corpus is denied. Certificate of probable cause is granted.

It is so ordered.