BROWNING v. MICHIGAN DEPARTMENT OF CORRECTIONS

OPINION OF THE COURT

1. PARDON AND PAROLE—CRIMINAL LAW—DEAD TIME—WORDS AND PHRASES—PAROLE VIOLATOR—SENTENCE—STATUTES.

The term "dead time" is a convenient shorthand description of a period, created by statute, during which the running of a parole violator's sentence is suspended (MCLA § 791.238).

2. PARDON AND PAROLE—CRIMINAL LAW—DEAD TIME—STATUTES—PRESUMPTION—INTERSTATE PAROLE COMPACT.

The interstate parole compact had been in existence for quite some time when the legislature revised the statute relating to "dead time" in 1968 and, as such, a presumption arises that the legislature was aware of both its adoption and content when it redefined "dead time" (MCLA §§ 791.238, 798.101 et seq.).

---

REFERENCE FOR POINTS IN HEADNOTES
[1-12] 39 Am Jur, Pardon, Reprieve, and Amnesty §§ 81-95.

3. Criminal Law—Dead Time—Sentences—Consecutive Sentences—Concurrent Sentences—Statutes—Presumption—Legislative Intent.

A presumption obtains that the legislature was aware of both the adoption and content of the interstate parole compact which had been in existence for quite some time when it amended the dead time statute in 1968; realized that Michigan, unlike most states, had renounced consecutive sentencing in favor of concurrent sentencing on the ground that so to allow consecutive sentences would render the second sentence uncertain and indefinite and subject to undefined and uncertain contingencies; and recent actions of the legislature with respect to this statute reflect a clear intent to favor concurrent sentences (MCLA § 791.238).

4. Criminal Law—Pardon and Parole—Statutes—Construction—Legislative Intent—Dead Time—Sentences—Concurrent Sentences.

Deletion of language, which provided that a parole violator shall serve the second sentence only after the first sentence is served or annulled, in the last two statutory provisions of the dead time statute, consonant with the Michigan Supreme Court's prior construction, reflects and confirms the legislative intent that a parole violator should serve his sentences concurrently (MCLA § 791.238).

5. Criminal Law—Pardon and Parole—Statutes—Concurrent Sentences—Dead Time—Parole Violator—Legislative Intent.

The present dead time statute continues to effect the legislative intent that a parole violator should serve his sentences concurrently and, when the statutory language was revised in 1968 to expressly provide that the "date of arrest" would be the date of his availability for return to the Michigan prison authorities, no change in the basic meaning of "dead time" was intended or accomplished (MCLA § 791.238).

6. Pardon and Parole—Parole Violator—Criminal Law—Dead Time—Arrest.

Arrest of an in-state parolee, for all practical purposes, terminates his dead time, as a prisoner paroled within the Michigan jurisdiction who subsequently violates his parole is immediately available for return upon his arrest and issuance of a parole violation warrant (MCLA § 791.238.)

7. PARDON AND PAROLE—PAROLE VIOLATOR—CRIMINAL LAW—DEAD TIME—INTERSTATE PAROLE COMPACT.

A prisoner paroled out-state under the interstate parole compact who violates parole by committing an offense against a foreign sovereign, does not have his dead time end until he is declared available by the foreign sovereign for return to Michigan; the foreign sovereign, under the terms of the compact, is not required to return the out-state parolee until the sentence imposed by that sovereign has been satisfied; and the out-state violator cannot begin to complete his Michigan sentence until he finishes his prison term in the foreign jurisdiction and is handed over to the Michigan authorities. (MCLA §§ 791.238, 798.101 *et seq.*).

8. PARDON AND PAROLE—CRIMINAL LAW—DEAD TIME—STATUTES—INTERSTATE PAROLE COMPACT—CONSECUTIVE SENTENCES—SENTENCE—CONSTITUTIONAL LAW—EQUAL PROTECTION.

Suspension of the Michigan sentence until the service of the foreign sovereign's term of imprisonment effectually imposes consecutive sentences, as one does not commence until the other has expired, and, construed to operate in this manner, the dead time statute not only violates the requirement that consecutive sentences must be based upon express statutory provisions, but also invidiously sub-classifies the out-state parolee solely upon the basis of geography; the beneficent and rehabilitative purposes of the interstate parole compact do not require this discrimination and the dead time statute so strictly construed would constitute an unreasonable classification violative of equal protection guarantees; further, the statute contravenes the manifested legislative intent against consecutive sentences (MCLA §§ 791.238, 798.101 *et seq.*).

9. CRIMINAL LAW—DEAD TIME—PARDON AND PAROLE—STATUTES—LEGISLATIVE INTENT—INTERSTATE PAROLE COMPACT—SENTENCE—CONSECUTIVE SENTENCES.

The dead time statute must be read *in pari materia* with the interstate parole compact to effect the constitutionally approved and well-established legislative intent against consecutive sentences and to this end, the phrase "date of availability" means actual or constructive availability for return to the Michigan penal system and the arrest of a parolee, irrespective of the location of the arrest, coupled with the issuance of a parole violation warrant and good faith effort to retake the parolee, constitutes constructive availability (MCLA §§ 791.238, 798.101 *et seq.*).

10. CRIMINAL LAW—SENTENCE—PARDON AND PAROLE.
  Petitioner was constructively available for return to Michigan
    and has fully satisfied his two to ten year penal obligation
    to this state, where he served over two years and nine months
    in a Michigan prison and served seven years, ten months and
    eight days in Georgia and Illinois for offenses committed while
    on parole from the Michigan sentence.

### DISSENTING OPINION
### BLACK and T. E. BRENNAN, JJ.

11. PARDON AND PAROLE—ESCAPE—CRIMINAL LAW.
  *No difference exists between the effect of a prison escape ending
    in another felony, and an effort by rehabilitative parole which
    results in the same or worse criminal acts.*

12. PARDON AND PAROLE—VIOLATIONS—SENTENCE—CREDIT ON SENTENCE—STATUTES.
  *A parolee, in Michigan, is credited with time served on parole
    without violations; hence, granting petitioner credit only for
    time served on parole which is free of violations reflects the
    spirit and letter of Michigan statutes and a common practice
    of sister states (MCLA § 791.238).*

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Levin and V. J. Brennan, JJ., order denying complaint for superintending control in the nature of mandamus. Submitted February 3, 1971. (No. 26 January Term 1971, Docket No. 52,726-1/2.) Decided July 7, 1971.

Habeas Corpus filed in Jackson circuit court by Robert D. Browning against Michigan Department of Corrections. Writ denied. Original complaint in Court of Appeals by Robert D. Browning against the Michigan Department of Corrections for habeas corpus which that Court treated as a complaint for writ of superintending control in the nature of mandamus. Denied. Defendant appeals. Reversed and remanded for entry of order granting writ and discharging petitioner.

Robert D. Browning, *in propria persona* (*Arthur
J. Tarnow,* State Appellate Defender, on oral argument), for defendant.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Stewart H. Freeman,* Assistant Attorney General, for defendant.

T. M. KAVANAGH, C. J.    This is a prison "dead
time" case here in the form of habeas corpus to
inquire into petitioner's detention in the State
Prison of Southern Michigan at Jackson.    The term
"dead time" as a convenient shorthand desription of
a period, created by statute,[1] during which the running of a parole violator's sentence is suspended.
The term will be more precisely defined herein.[2]

Petitioner Robert D. Browning was sentenced on
August 22, 1958, in Recorder's Court of Detroit to a
two to ten year prison term for the crime of larceny
from the person.[3]

On December 14, 1960, petitioner Browning was
paroled to Summerville, Georgia.    Under the terms
of the interstate parole compact (hereinafter referred to as "the Compact"), to which Michigan and
Georgia are signatories,[4] Georgia, through its Board
of Pardons and Paroles, assumed the duties of
supervision over petitioner.

On February 10, 1961, petitioner was arrested by
Georgia State Troopers on charges of driving while
intoxicated and without a Georgia license.    On
February 26, 1961, the Georgia authorities added
charges of armed robbery.    Petitioner was convicted

---

[1] MCLA § 791.238 (Stat Ann 1971 Cum Supp § 28.2308).

[2] *Infra,* p 184.

[3] MCLA § 750.357 (Stat Ann 1954 Rev § 28.589).    The crime is
punishable by imprisonment for a maximum of ten years in the
state prison.

[4] MCLA § 798.101 *et seq.* (Stat Ann 1954 Rev § 28.1361 *et seq.*);
Ga Code Ann § 27-2701a.

of all the Georgia crimes charged and sentenced to Georgia imprisonment.

Meanwhile, on April 4, 1961, the Michigan Department of Corrections (hereinafter called "the Department"), having been informed of the Georgia charges, issued a parole violation warrant[5] for petitioner's arrest and forwarded it to the Georgia Board of Pardons and Paroles "as our (the Department's) detainer." Thereafter, the Department repeatedly inquired of the Georgia authorities as to petitioner's status, and particularly as to when he would be released. No request was made that petitioner be turned over to Michigan authorities prior to completing service of his Georgia sentences.

On June 15, 1965, petitioner was released by Georgia into the direct physical custody of Michigan authorities. He was promptly returned to the State Prison of Southern Michigan and was found guilty of parole violation by reason of his Georgia convictions. The parole order of December 14, 1960, was rescinded and petitioner continued imprisoned service of his Michigan sentence. Under the provisions of PA 1953, No 232 (MCLA § 791.238 [Stat Ann 1954 Rev § 28.2308]), petitioner was found to have accumulated four years, four months and five days "dead time", that is, the period from the date of his Georgia arrest (February 10, 1961) until the date of his return to the physical custody of Michigan authorities (June 15, 1965).

On October 21, 1965, petitioner was paroled to Chicago, Illinois, where, pursuant to the interstate parole compact,[6] he was under the supervision of Illinois authorities. On February 8, 1966, petitioner was arrested on charges of attempted armed robbery by the Chicago police. He was subsequently

[5] See MCLA § 791.238 (Stat Ann 1954 Rev § 28.2308).
[6] Smith-Hurd Ill Ann Stat ch 38, § 123-5 et seq. See fn 4, supra.

convicted and sentenced to four to five years in the Illinois State Penitentiary.

On February 17, 1966, the Department issued a parole violation warrant for petitioner's arrest which was filed as a detainer with the Illinois authorities. Although the Department subsequently inquired as to petitioner's earliest release date, no request was made that he be turned over to Michigan authorities prior to completing service of his Illinois sentence.

On August 11, 1969, petitioner was paroled by the Illinois authorities and taken into direct physical custody by Michigan officials. He was promptly returned to the State Prison of Southern Michigan and found guilty of parole violation by reason of his Illinois conviction. The parole order of October 21, 1965, was rescinded and petitioner continued imprisoned service of his Michigan sentence. Under the provisions of PA 1968, No 192, § 1 (MCLA § 791.238 [Stat Ann 1971 Cum Supp § 28.2308]), petitioner was found to have accumulated 3 years, 6 months and 3 days "dead time", that is, the period from the date of his Illinois arrest (February 8, 1966) until the date of his return to the physical custody of Michigan authorities (August 11, 1969).

As a result of accumulated "dead time" totaling seven years, ten months and eight days, petitioner Browning is still serving the two to ten year sentence imposed in Recorder's Court of Detroit on August 22, 1958.

On August 18, 1969, Mr. Browning challenged the "dead time" deductions by filing, *in propria persona,* a petition for a writ of habeas corpus in Jackson Circuit Court. The Honorable Charles J. Falahee denied the petition. The Court of Appeals denied "for lack of merit" petitioner's subsequent uncounseled "Complaint for Habeas Corpus," treating it

as "a complaint for writ of superintending control in the nature of mandamus." We granted leave to appeal. 383 Mich 807.

The above-stated facts present for unprecedented construction and interpretation by our Court the interrelationship between the recently amended dead time statute[7] and the Compact.

The Compact was adopted by Michigan in 1935. Thus, it had been in existence for quite some time when the legislature revised the statute relating to "dead time" in 1968. As such, a presumption arises that the legislature was aware of both its adoption and content when it redefined "dead time". *People* v. *Buckley* (1942), 302 Mich 12, 21.

The same presumption also obtains that the legislature, when it amended the dead time statute, realized that Michigan, unlike most states, had renounced consecutive sentencing in favor of concurrent sentencing on the grounds "that so to allow [consecutive sentences] would render the second sentence uncertain and indefinite and subject to 'undefined and uncertain contingencies.'" *In re Carey* (1964), 372 Mich 378, 380. See also, *In re Bloom* (1884), 53 Mich 597; *In re Lamphere* (1886), 61 Mich 105; *In re Allison* (1948), 332 Mich 491. Moreover, while this policy is qualified by the proviso that consecutive sentencing under specific statutory authorization is permissible (*Carey, supra,* at 380), recent actions on the part of the legislature itself with respect to the dead time statute reflect

---

[7] Petitioner's appointed counsel orally argued that the 1968 amendment (MCLA § 791.238 [Stat Ann 1971 Cum Supp § 28.2308]) is inapplicable to this case, even though the second "dead time" suspension was computed subsequent to the 1968 revision, because petitioner's 10 year maximum sentence expired prior to the 1968 revision. It is not necessary to consider this contention because we have concluded that the 1968 revision effected no practical change in the meaning of "dead time." See text.

a clear intent on the part of that body to also favor concurrent sentences.

Prior to the 1953 revision of the dead time statute the language contained therein specifically provided that a parole violator "shall serve the second sentence [only] after the first sentence is served or annulled."[8] That language was deleted in the 1953 revision of the dead time statute and was likewise omitted in the 1968 revision. The deletion of such language in the last two statutory revisions, consonant with our Court's prior construction, reflects and confirms the legislative intent that a parole violator should serve his sentences concurrently.

The present statute continues to effect this legislative intent. Although some of the language relating to termination of "dead time" appears to be new, the substantive intent and design remain and are in accord with our decisional interpretations. Before the latest revision the pertinent statute provided that, in the event of parole violation, "the time from the date of his [the parolee's] declared delinquency to the date of his arrest shall not be counted as any part or portion of the time to be served." Our decisions construing this language made it clear that "date of arrest" would properly be read to include "date of availability to the Michigan prison authorities." *In re Holton* (1943), 304 Mich 534; *In re Davis* (1945), 312 Mich 154; *In re Ginivalli* (1953), 336 Mich 101; *In re Colin* (1953), 337 Mich 491. Hence, when the statutory language was revised in 1968 to expressly so provide, we do not think a change in the basic meaning of "dead time" was intended or accomplished.

In this context we must, as a matter of first impression, now determine the meaning of "date of

---

8 CL 1948, § 791.36 (Stat Ann 1951 Cum Supp § 28.2176).

his availability for return to any penal institution under control of the commission."

The question arises because the differing circumstances between the in-state and out-state parolee results in disparate treatment under the same dead time statute. A prisoner paroled within the Michigan jurisdiction who subsequently violates his parole is immediately available for return upon his arrest and issuance of a parole violation warrant. For all practical purposes, the arrest of an in-state parolee terminates his dead time. *In re Holton, supra.* On the other hand, the prisoner paroled out-state under the Compact who violates parole by committing an offense against a foreign sovereign, does not have his "dead time" end until he is declared available by the foreign sovereign for return to Michigan.[9] The foreign sovereign, under the terms of the Compact, is not required to return the out-state parolee until the sentence imposed by that sovereign has been satisfied. As in the present case, the out-state violator could not begin to complete his Michigan sentence until he finished his prison term in the foreign jurisdiction and was handed over to the Michigan authorities.

In practice, the suspension of the Michigan sentence until the service of the foreign sovereign's term of imprisonment effectually imposes consecutive sentences. One does not commence until the other has expired.

Construed to operate in this manner, the "dead time" statute not only violates the requirement that consecutive sentences must be based upon express statutory provisions (*Carey, supra,* at 380), but

---

[9] Although the writ denials below have restricted fact-finding in this case, we are apprised that petitioner has correctly stated the current disparate computation of "dead time" by a memorandum prepared by the Director of the Department of Corrections which appears in the people's appendix and is appended to this opinion.

also invidiously sub-classifies the out-state parolee solely upon the basis of geography. The beneficent and rehabilitative purposes of the Compact do not require this discrimination and the dead time statute so strictly construed would constitute an unreasonable classification violative of equal protection guarantees. *Fox* v. *Employment Security Commission* (1967), 379 Mich 579. Further, the statute—if viewed in this manner—contravenes the manifested legislative intent against consecutive sentences.

We decline to accord the dead time statute an unreasonable and strained construction. Rather, we believe that the dead time statute must be read *in pari materia* with the Compact to effect the constitutionally approved and well-established legislative intent against consecutive sentences, which abides absent some clearly expressed contrary provision. To this end, we construe and so hold that the phrase "date of availability" means actual *or* constructive availability for return to the Michigan penal system. The arrest of a parolee, irrespective of the location of the arrest, coupled with issuance of a parole violation warrant and good faith effort to retake the parolee constitutes constructive availability.

We conclude that petitioner was constructively available for return and has fully satisfied his penal obligation to this state. The Court of Appeals and trial court are reversed. The case is remanded to the Jackson Circuit Court for prompt entry of an order granting the writ and discharging petitioner. Petitioner's discharge may be temporarily postponed pending notification to the Illinois parole authorities, who shall be given a reasonable period in which to take such action as they deem advisable regarding petitioner.

ADAMS, T. G. KAVANAGH, SWAINSON and WILLIAMS, J.J., concurred with T. M. KAVANAGH, C. J.

## APPENDIX

## STATE OF MICHIGAN

DEPARTMENT OF CORRECTIONS
Stevens T. Mason Building
Lansing, Michigan 48926
Gus Harrison, Director

January 27, 1969

DIRECTOR'S OFFICE MEMORANDUM.

To: Deputy Directors, Institution Heads, Parole Board, and Record Clerks

Re: Computation of "Dead Time" in Parole Violation Cases.

Act 192 of the Public Acts of 1968 amended the Parole statute to provide that the time from the date of the declared violation to the date if the parolee's availability for return not be counted as any part or portion of the time to be served on the sentence, or sentences, from which paroled. The statutory use of the word "availability" casts a new light upon "dead time" and its determination. Henceforth, dead time with respect to parole violators will be computed as follows:

1. The date on which an alleged violator is arrested in Michigan by any probation officer, parole officer, or peace officer on charges of technical violation, new criminal charges, or both technical violation and criminal charges will be considered the date of availability, and except as provided in Item 4, service on the sentence from which paroled will resume running as of that date. Dead time will be the time from the date of violation to the date of arrest.

2. If an alleged violator is held on new criminal charges, regardless of whether or not there are

also technical charges, is brought to trial on the new criminal charges and acquitted, or the charges are dismissed, or nolle prossed, the only dead time will be the time from the date of violation to the date of arrest.

3. If there is a conviction on the new charges and the parole violator is placed on probation, dead time will be the time from the date of the violation to the date of the arrest.

4. If disposition of the new criminal charges results in a sentence to a jail of this state or a federal penal institution, or a jail or a penal institution in another state, the date of availability will be the date on which the violator is lawfully released from confinement on the new sentence. The time from the date of sentence to the date of such release will be declared dead time.

5. If disposition of the criminal charges results in a sentence to confinement in an institution under the jurisdiction of the Michigan Corrections Commission, the only dead time will be the time from the date of violation to the date of arrest.

6. If an alleged violator is held in local confinement pending trial on new criminal charges, the Parole Board may extend the parole period, if it appears that the original fixed parole period may expire before final disposition is made on the new criminal charges.

7. If the alleged violator is arrested outside the State of Michigan, the date of availability will be the date on which authorities in the holding jurisdiction declare the alleged violator to be available for return to Michigan. The time from the date of violation to the date of declared availability will be considered dead time.

In the interest of equity, this policy will be retroactively applied to persons now serving sentence if dead time for violation of parole from the sentence being served was computed under any other

formula. This will also apply to persons currently under parole who have forfeited time for violation of prior paroles on the current sentence.

Since this policy is to be applied retroactively, it is important that priority be given to cases which would become eligible for parole consideration or discharge with dead time restoration.

Restoration of dead time will be made by administrative order in accordance with this memoradum. Cases in which restoration action is taken should be stamped or identified in some manner as having been amended. From this date on, violation and custody dates will be set by the Parole Board as in the past.

Attached is a listing of cases to be reviewed.

> Sincerely,
> DEPARTMENT OF CORRECTIONS
> /s/ Gus Harrison
> Gus Harrison, Director

GH:jm

BLACK, J. (*dissenting*). Before us is another appeal by a veteran convict for relief from the legal effect of successive felonies committed by him. Starting in Michigan from conviction for larceny from the person, and proceeding thence to successive convictions for armed robbery in Georgia and then in Illinois following his initial parole by Michigan, he objects to further incarceration in our state for violation of that parole. He wants credit, for time served in Georgia and Illinois, applied to service he yet owes Michigan for crimes committed in Michigan. This he asks upon allegation that the legislature of our state has intended and now intends that the service of a sentence or sentences imposed by another or several other states constitutes a part of the service of one or more sentences imposed under the laws of our state.

I have stated the contention without verbiage. Let it stand, so that legislators may read and comprehend Mr. Browning's declaration of what is said to have been in their minds when they voted enactment of the statutes mentioned below.

Twenty-four years ago the controlling principle of today's issue came before the then Attorney General of Michigan, upon request of the Director of Corrections:

"The director of corrections has requested the opinion of the attorney general upon the question of when a sentence for a felony committed by an escaped felon while at large commences to run, and whether it runs concurrently with the remainder of the sentence interrupted by the prison breach."

Writing for the Attorney General, assistant attorney general Peter E. Bradt quoted Justice Cardozo's opinion, for the Court, of *People* v. *Ingber* (1928), 248 NY 302 (162 NE 87). Then he concluded* (p 267):

"The attorney general holds that a prison breach interrupts the service of sentence, and that such interruption continues during the service of a second sentence for a crime committed while at large following the prison breach, despite the fact that the second sentence is served in the same prison from which escape was made. Service under the original sentence is not resumed until after completion of the sentence imposed for the crime committed by the convict unlawfully at large."

I perceive no difference between the effect of a prison escape ending in another felony, and an effort by rehabilitative parole which results in the same or worse criminal acts. Nor do I perceive from the aforesaid statutes that the legislature has intended

* OAG, 1947–1948, No 257, p 263 (May 28, 1947).—REPORTER.

or willed otherwise. As Cardozo concluded in the cited *Ingber* case; "Nothing short of obvious compulsion will lead us to a reading of the statute whereby the pains and penalties of crimes are shorn of all terrors more poignant than a form of words."

As with other criminal appeals submitted this year, I find myself almost automatically in the minority. Such being the case, perhaps the best way to respond to majority agreement with this particular felon (without using up more useless pages of our reports) is to say simply that I agree with the Attorney General when he declares:

"In Michigan, the parolee is credited with *time served on parole without violations.* This is the intent of both the amended and prior version of the statute involved. For example, as amended MSA § 28.2308 [MCLA 1971 Cum Supp § 791.238] provides that a Michigan parolee who commits a crime while on parole:

" ' . . . shall be liable, when arrested, to serve out the expired portion of his maximum imprisonment, and the time from the date of declared violation to the date of his availability for return to any penal institution under the control of the commission shall not be counted as any part or portion of the time to be served . . . '

"Similarily, MSA § 28.2308 [MCLA § 791.238] prior to the 1968 amendment provided a Michigan parolee who violated the provisions of his parole was:

" ' . . . liable, when arrested, to serve out the unexpired portion of his maximum imprisonment, and the time from the date of his declared delinquency to the date of his arrest shall not be counted as any part or portion of the time to be served . . . ' "

Then, having pointed to a list of States furnished by the Model Penal Code (tentative draft No. 5,

1956, p 126) in support of his statement that "Michigan is not alone in granting credit only for time served on parole which is free of violations", the Attorney General concludes, and I agree:

"Hence, granting petitioner credit only for time served on parole which is free of violations reflects the spirit and letter of Michigan statutes and a common practice of sister states."

I would affirm.

T. E. BRENNAN, J., concurred with BLACK, J.