**Otis G. WEEKS, Jr.,
Petitioner–Appellant,**

v.

**J. Michael QUINLAN, Warden,
Respondent–Appellee.**

No. 1427, Docket 86–2027.

United States Court of Appeals,
Second Circuit.

Argued Aug. 13, 1987.

Decided Jan. 25, 1988.

Kevin McNulty, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, of counsel), for petitioner-appellant.

Bernard W. Bell, New York City, Asst. U.S. Atty., S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., of counsel), for respondent-appellee.

Before WINTER and MAHONEY, Circuit Judges, and RE, Chief Judge, United States Court of International Trade.*

RE, Chief Judge, Court of International Trade.

Otis G. Weeks, Jr., a prisoner at the Federal Correctional Institute in Otisville, New York, appeals from a judgment of the United States District Court for the Southern District of New York which denied his petition for a writ of habeas corpus. Weeks filed a habeas corpus petition seeking credit on his federal sentence for the 25 months that he served in state prison after federal authorities released him from federal prison to state authorities. The court held that, upon Weeks' conviction for narcotics possession with intent to distribute, in violation of his parole, the United States Parole Commission (the Parole Commission) was authorized under 18 U.S.C. § 4210(b)(2) (1982), to deny Weeks credit for time served in state prison after his parole from federal custody to a state detainer pursuant to 28 C.F.R. § 2.32(a)(1) (1977). Under section 4210 of the Parole Commission and Reorganization Act (the Parole Act), the Parole Commission may revoke the parole of any parolee convicted of a new offense punishable by imprisonment, and order that no credit be received for the time served after release on parole.

The question presented on this appeal is whether the district court erred in upholding the determination of the Parole Commission that a federal prisoner who was paroled to detaining state authorities to serve a state sentence, pursuant to 28 C.F.R. § 2.32(a)(1), and subsequently violated his parole, can be denied credit on his federal sentence for the time he served in state prison, pursuant to 18 U.S.C. § 4210(b)(2).

■ Since the court holds that "[p]arole to the actual physical custody of the detaining authorities only," pursuant to 28 C.F.R. § 2.32(a)(1), is parole within the meaning of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–4218, and that the

Parole Commission was authorized to deny Weeks credit for the time served in state prison after his parole from federal prison, the decision of the district court is affirmed.

Weeks contends that his release from federal prison under 28 C.F.R. § 2.32(a)(1), "to the actual physical custody of the detaining authorities only," does not constitute "parole" within the meaning of 18 U.S.C. § 4210(b)(2). Weeks maintains that he was not paroled until he was released into the community, and, therefore, his federal sentence should be credited with the 25 months he served in state prison.

The respondent, Warden J. Michael Quinlan, contends that release from federal incarceration, pursuant to 28 C.F.R. § 2.32(a)(1), constituted valid parole, and, therefore, Weeks cannot be credited for any time he served from his release from federal incarceration on March 24, 1978 to the time of his subsequent arrest.

## Background

In April 1975, a Virginia state court sentenced Weeks to 18 months imprisonment for distribution of heroin, and 4 years for possession. In May 1975, Weeks was convicted in the United States District Court for the Eastern District of Virginia, of conspiracy to distribute heroin in violation of federal law, and was sentenced to 8 years imprisonment. The state sentence for possession was to run consecutively to the federal sentence, while the state sentence for distribution was to run concurrently with the federal term.

On October 18, 1977, Weeks received an initial parole hearing in which the examiner panel determined that Virginia had lodged a detainer against Weeks on the basis of his state narcotics convictions. A detainer is a request "to an imprisoning jurisdiction to detain a person upon his release so that another jurisdiction may prosecute or incarcerate him...." *See Pitts v. North Carolina*, 395 F.2d 182, 187 (4th Cir.1968). Hence, the state detainer directed the federal correctional officials to continue hold-

* Sitting by designation pursuant to 28 U.S.C. § 293(a) (1982).

ing Weeks in custody pending state action. The panel concluded that, under its guidelines, Weeks should be paroled after serving between 36 and 48 months.

On March 24, 1978, after serving approximately 36 months of his federal sentence, Weeks was released pursuant to 28 C.F.R. § 2.32(a)(1), to the custody of the state of Virginia. Under the Interstate Agreement on Detainers Act, the federal authorities were required to notify the state authorities of the forthcoming release of the prisoner. *See* 18 U.S.C. app. § 2 (1976). Weeks served 25 months of his state sentence and was released from state prison in April 1980.

On January 18, 1983, Weeks was arrested in Virginia for possession of heroin with intent to distribute, and possession of marijuana. At the time of his arrest, Weeks was still on parole from federal custody. In June 1983 Weeks was convicted of both narcotics charges, and was sentenced by state authorities to 8 years imprisonment.

As a result of Weeks' conviction by the state, the United States Parole Commission, after appropriate administrative proceedings, revoked his parole, and determined that, pursuant to 18 U.S.C. § 4210(b)(2), "the entire period of time of parole from the date of Mr. Weeks release [from] federal custody was to be forfeited," including the time he spent in state prison.

Weeks filed a petition for a writ of habeas corpus claiming that the time he spent in state prison was not time on parole, and, therefore, the Parole Commission could not deny him credit for that time. The petition was referred to Magistrate Dolinger, who, after a full briefing of the questions presented, issued a report recommending denial of the petition.

In the United States District Court for the Southern District of New York, Judge Edward Weinfeld, by a memorandum endorsement, adopted Magistrate Dolinger's recommendation to dismiss the habeas corpus petition. In rejecting the various arguments made by Weeks, Judge Weinfeld noted that once the detaining authority takes the prisoner into custody, the state may release him at any time, and concluded that since the "federal authorities no longer exercise[d] any control over the date of the parolee's release to the community, it would be inappropriate to treat the resulting state custody as a continuation of the federal confinement." *Weeks v. Quinlan,* No. 84 Civ. 3151, slip op. at 6 (S.D.N.Y. Nov. 24, 1985).

### Discussion

It is a well-established principle of administrative law that due weight or deference should be accorded to an agency's interpretation of a statute that it is charged to administer. *See, e.g., United States v. City of Fulton,* 475 U.S. 657, 666, 106 S.Ct. 1422, 1428, 89 L.Ed.2d 661 (1986); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Regardless of the specific language used by the courts in giving weight or deference to the agency's interpretation of its statutory language, it is clear that the agency's interpretation should be followed "unless there are compelling indications that it is wrong." *See Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *see also Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985); *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982).

The United States Parole Commission was established by Congress to promulgate rules and regulations necessary to carry out a national parole policy, and to administer the Parole Act. *See* 18 U.S.C. § 4203 (1982). Section 4203 of Title 18 of the United States Code provides in pertinent part:

(a) The Commission ... shall—

(1) promulgate rules and regulations establishing guidelines for the powers enumerated in subsection (b) of this section and such other rules and regulations as are necessary to carry out a national parole policy and the purposes of this chapter;

. . . .

(b) The Commission, by majority vote, and pursuant to the procedures set out in this chapter, shall have the power to—

(1) grant or deny an application or recommendation to parole any eligible prisoner;

(2) impose reasonable conditions on an order granting parole;

(3) modify or revoke an order paroling any eligible prisoner;

. . . .

18 U.S.C. § 4203(a), (b) (1982).

In reviewing an agency's interpretation of the statute which it administers, the court must determine whether Congress has "directly addressed the precise question at issue. . . ." *See Chevron U.S.A. Inc.*, 467 U.S. at 843, 104 S.Ct. at 2782. If Congress has addressed the issue, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* The cases teach that an agency's interpretation of a statute need not be the only reasonable one, or even the one the court would have adopted if the question had initially arisen in a judicial proceeding. *See id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11; *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981). Indeed, for the agency interpretation to be accepted, it need only be shown that it is "sufficiently reasonable." *See Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. at 39, 102 S.Ct. at 46.

On this appeal, to resolve the question presented, the court must determine whether parole to a state detainer, under 28 C.F.R. § 2.32(a)(1), is parole within the meaning of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–4218. It is axiomatic that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*,

447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Section 4210 of Title 18 of the United States Code provides, in pertinent part:

(b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that—

.     .     .     .     .

(2) in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

18 U.S.C. § 4210(b)(2) (1982). In essence, under the provisions of 18 U.S.C. § 4210(b)(2), the Parole Commission may revoke the parole of any parolee convicted of a new offense punishable by imprisonment, and may order that no credit be received for time served after the date of release on parole. The statutory language, however, is not dispositive, since nowhere in the Parole Act does Congress define the term "parole." Nevertheless, under the Parole Act, the Parole Commission is given broad latitude to define the conditions of parole and to implement the parole statutes. Hence, its construction of the term "parole," as encompassing "parole to the actual physical custody of the detaining authorities only," should be given due deference.

Section 2.32 of the Parole Commission's regulations governs the parole of federal

prisoners against whom detainers have been lodged by state authorities. 28 C.F.R. § 2.32 (1977). This section provides for two types of parole as follows:

§ 2.32 *Parole to local or immigration detainers.*

(a) When a state or local detainer is outstanding against a prisoner whom the Commission wishes to parole, the Commission may order either of the following:

(1) "Parole to the actual physical custody of the detaining authorities only." In this event, release is not to be effected except to the detainer. When such a detainer is withdrawn, the prisoner is not to be released unless and until the Commission makes a new order of parole.

(2) "Parole to the actual physical custody of the detaining authorities or an approved plan." In this event, release is to be effected even though the detainer might be withdrawn, providing there is an acceptable plan for community supervision.

28 C.F.R. § 2.32(a)(1), (2) (1977).

Weeks contends that, pursuant to 28 C.F.R. § 2.32(a)(1), parole by order of the Parole Commission is not parole at all, but merely a continuation of federal confinement, because "parole" implies a decision to release an inmate to the community. He maintains that while release pursuant to section 2.32(a)(2) constitutes parole, release pursuant to section 2.32(a)(1) does not. Under section 2.32(a)(2) a federal prisoner is paroled to a state detainer, but release is to be effected to the community if the state officials withdraw their detainer or make no effort to assume custody of the prisoner. Under section 2.32(a)(1), however, if the state authorities withdraw their detainer, the prisoner must be returned to federal prison, and is not to be released until the Parole Commission makes a new order of parole. Hence, Weeks contends that parole pursuant to section 2.32(a)(1) is merely a transfer from federal prison to state prison.

In support of this interpretation of 28 C.F.R. § 2.32(a)(1), Weeks cites *Garafola v. Wilkinson*, 721 F.2d 420 (3d Cir.1983), *cert.*

*denied*, 466 U.S. 905, 104 S.Ct. 1681, 80 L.Ed.2d 155 (1984). In that case, a parole violator was denied credit for time served in state prison, pursuant to a detainer. The court held that "a 'parole to a state detainer' made pursuant to section 2.32(a)(2) of the Parole Commission's regulations ... is a 'parole' within the meaning of the Parole Act." *Id.* at 421. The court reasoned that parole included release to another prison authority because the Parole Commission still applied the appropriate federal criteria in determining whether a prisoner was entitled to parole. *Id.* at 424.

In *Garafola*, the court observed that, "if Garafola had in fact been paroled pursuant to § 2.32(a)(1), it would present a very different case than a parole pursuant to § 2.32(a)(2)." *Id.* at 425 n. 11. Weeks relies on this dictum from the *Garafola* case to show that the revocation of credit for state prison time is appropriate under section 2.32(a)(2), but not under (a)(1).

The court, in *Garafola*, however, did not consider whether parole could be interpreted as including release to a state detainer pursuant to section 2.32(a)(1), but rather, considered release pursuant to section 2.32(a)(2). Moreover, the court did not explain how parole under section 2.32(a)(1) would differ from parole under section 2.32(a)(2). Hence, the court's reference to section 2.32(a)(1) is dictum which we do not find persuasive in the case presently before the court.

The difference in the subsections of the regulation indicates that, although prisoners may be paroled from federal prison, release to the community may be appropriate for some, while further incarceration in state prison is necessary for others. Respondent, Warden Quinlan, contends that, in either case, the Parole Commission's determination to release a prisoner to a state detainer is nevertheless parole because under the Parole Commission and Reorganization Act parole "is designed to release an inmate only from his obligation to serve his federal sentence; the states, independent sovereigns, control the obligation to serve state sentences." In sum, respondent

maintains that "the crucial aspect of federal parole is not release into the community, but release from the federal obligation to serve time in prison."

In this case, when the federal authorities released Weeks to the state prison, they effectively relinquished all control over him. The moment that the state assumed physical control of Weeks, it was the state, as a separate sovereign, that had the power to decide the ultimate date of his release. *See United States ex rel. Stanbridge v. Quinlan,* 595 F.Supp. 1145, 1150 (S.D.N.Y.1984). Thus, since the federal authorities no longer exercised any control over Weeks' imprisonment, the subsequent confinement in a state prison cannot be considered a continuation of federal confinement.

Although Weeks concedes that release to a state detainer under section 2.32(a)(2) constitutes a valid parole, he contends that parole under section 2.32(a)(1) is not parole. *See, e.g., Garafola,* 721 F.2d at 424–25; *Clay v. Henderson,* 524 F.2d 921, 923 (5th Cir.1975), *cert. denied,* 425 U.S. 995, 96 S.Ct. 2210, 48 L.Ed.2d 820 (1976); *United States ex rel. Stanbridge v. Quinlan,* 595 F.Supp. 1145, 1150 (S.D.N.Y.1984). Hence, Weeks urges that the court make a distinction between sections 2.32(a)(1) and (a)(2). This distinction, however, would allow a prisoner, who was released to a state detainer under section 2.32(a)(1), and subsequently violated parole, to receive credit for the time he served in state prison, while a prisoner released under section 2.32(a)(2), would forfeit the time served in state prison. No reasonable basis has been given for this distinction.

Parole under either section constitutes a decision on the part of the Parole Commission that the inmate has satisfied the federal criteria for parole eligibility, and should be released to the authority of the state. Thus, the essence of parole is release from an obligation to serve time in prison, and parole pursuant to section 2.32(a)(1) is a release that accomplishes that purpose.

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron U.S.A. Inc.,* 467 U.S. at 843, 104 S.Ct. at 2782 (quoting *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974)). Although a court may reject an agency interpretation that contravenes clearly discernible legislative intent, if Congress has implicitly left a gap for the agency to fill, a court may not substitute its own interpretation of a statutory provision for a reasonable interpretation made by the administrative agency. *See Chevron U.S.A. Inc.,* 467 U.S. at 843–44, 104 S.Ct. at 2782.

There is nothing in the legislative history of the Parole Act to suggest that a prisoner who is paroled to the custody of state prison authorities is not on parole, or that parole violators should receive federal parole credit for time served in state prison. Indeed, the regulations of the United States Parole Board, which were in effect when the Parole Act was passed, included a provision, similar to section 2.32(a)(1), that provided for "parole of prisoner subject to local detainer." *See* 28 C.F.R. § 2.9 (1962). Congress, however, has taken no action either to prohibit this form of parole, or to prohibit the Parole Commission from adhering to its interpretation of "parole."

Moreover, Weeks' interpretation of parole would undermine or frustrate the release policy effectuated by section 2.32(a)(1), and would work to the disadvantage of many prisoners facing dual sentences. By paroling prisoners on the condition that they serve a further period in state prison, the Parole Commission permits prisoners to fulfill their state obligations at an earlier date than if the federal authorities had kept them in federal prison until it was determined that they were ready to be released under section 2.32(a)(2). The Commission may release federal prisoners at an earlier date only if it is certain they will not be released into the community, should the state authorities fail to accept custody of the prisoners by withdrawing their detainer.

Weeks could have been required to serve his full federal sentence before being released to start serving his state sentence.

By paroling Weeks in 1978 under section 2.32(a)(1), the Parole Commission enabled him to begin serving his state sentence 12 months before the previously determined parole date. To allow Weeks to deny or repudiate that benefit now would do violence to the purpose and intent of the Parole Act.

Under section 4203 of Title 18 of the United States Code, Congress has implicitly delegated to the Parole Commission the legislative authority to define the terms and conditions of parole. Since the Parole Commission's construction of the term "parole," as encompassing "parole to the actual physical custody of the detaining authorities only," is reasonable and consistent with the policy and purpose of the Parole Act, that interpretation is sustained.

### Conclusion

In light of the language of the Parole Commission and Reorganization Act, and the congressional intent to delegate to the Parole Commission the authority to administer a national parole policy, the court holds that Weeks' release under 28 C.F.R. § 2.32(a)(1) was a valid parole. Hence, the Parole Commission was authorized under 18 U.S.C. § 4210(b)(2) to deny Weeks credit for time served in state confinement after his release from federal prison. The judgment of the district court is affirmed.