[No. 26690-0-I.    Division One.    April 13, 1992.]

*In the Matter of the Personal Restraint of*
RICHARD C. PEPPERLING, *Petitioner.*

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Thornton Wilson, Assistant,* for respondent.

AGID, J. — Richard C. Pepperling filed a personal restraint petition to obtain relief from a new minimum term set by the Indeterminate Sentence Review Board (the Board) after he violated his parole. Pepperling contends that the Board should have credited toward his new minimum and maximum terms time served in Montana after his Montana parole was suspended.

## I
### FACTS

On November 5, 1975, a Montana court sentenced Pepperling to a maximum of 20 years in prison for having committed a burglary. On May 23, 1977, Pepperling was sentenced in a Washington superior court for the crime of manslaughter, to which he pleaded guilty. He received a maximum 20-year sentence for that offense as well. The Washington court ordered that the sentences be served concurrently.

On March 27, 1986, Montana authorities paroled Pepperling. He was placed in the custody of Washington officials to continue serving his manslaughter sentence. Washington authorities paroled Pepperling in June 1987. Two months later, he absconded from supervision. Pepperling not only failed to obtain permission from his corrections officer before leaving the state, but he committed a third degree robbery in Oregon while on parole.[1] On December 4, 1987, the Washington Department of Corrections (DOC) issued a warrant for Pepperling's arrest and detention and an order

---

[1] Pepperling was sentenced to 5 years' probation and 60 days in jail for the robbery. His probation was transferred to Montana.

suspending his parole. In November 1988, Pepperling was returned to Montana as a result of his parole violation.[2] He was released from prison in Montana on April 17, 1990, and returned to the custody of Washington authorities on May 10, 1990.

The Board subsequently held a hearing and revoked Pepperling's parole. In determining a new minimum term, the Board calculated a "time loss" of 888 days,[3] reflecting the period from December 4, 1987, when DOC issued its parole suspension warrant, to May 10, 1990, when Pepperling was returned to DOC's custody. The Board set a new maximum expiration date of January 22, 1998.

II

DISCUSSION

Pepperling argues that, because the sentencing court expressly ordered that his Montana and Washington sentences be served concurrently, the Board is required to give him credit toward his new minimum term for time spent serving out his Montana sentence after Montana authorities revoked his parole. We conclude that Pepperling is entitled to credit for time served in Montana pursuant to his parole violation, but only against the *maximum* term originally imposed by the court.[4]

---

[2]It is not clear from the record what Pepperling was doing between August 1987 and November 1988 other than serving his 60-day sentence in Oregon.

[3]The Board actually calculated the time loss four times, reaching different results ranging from 336 days to 1,004 days. The last calculation resulted in a time loss of 888 days.

[4]Thus, we are not granting all the relief Pepperling requested in his petition. While he is entitled to credit toward his maximum 20-year sentence, this does not directly impact the amount of time the Board can set as a new minimum term when it evaluates parole violations because the Board, not the trial court, has exclusive authority to set new minimum terms for parole violations. RCW 9.95.121. However, because the trial court ran his Washington and Montana sentences concurrently, the new minimum term cannot exceed the 20-year maximum term, which must be reduced by the amount of time Pepperling served prior to his parole and in the Montana prison pursuant to his Montana parole violation.

Pepperling was sentenced in 1977, before the enactment of the Sentencing Reform Act of 1981 (SRA). The court ordered that his sentence run concurrently with his Montana sentence pursuant to RCW 9.92.080(3).[5] Prior to enactment of the SRA, the trial court had exclusive authority to set maximum term sentences. While the Board may set minimum terms for pre-SRA offenders, it has no authority to change a maximum term, even if it believes the maximum sentence is erroneous. *Hunton v. Kincheloe*, 54 Wn. App. 643, 646, 774 P.2d 1271 (1989); RCW 9.95.040. When the court orders a pre-SRA offender to serve his sentences concurrently, the Board may not run the sentences consecutively. *In re Chapman*, 105 Wn.2d 211, 216, 713 P.2d 106 (1986) (Board usurped role of sentencing judge by requiring defendants to serve sentences consecutively despite court's order that they be served concurrently).

The Board concedes not only that the sentences are concurrent, but that it has no authority to run the sentences consecutively. The Board nevertheless argues that RCW 9.95.130 prohibits it from crediting time served in Montana toward petitioner's Washington sentence. The statute provides:

From and after the suspension, cancellation, or revocation of the parole of any convicted person and *until his return to*

---

[5]RCW 9.92.080 provides, in pertinent part:

"(1) Whenever a person while under sentence of felony shall commit another felony and be sentenced to another term of imprisonment, such latter term shall not begin until the expiration of all prior terms: *Provided*, That any person granted probation pursuant to the provisions of RCW 9.95.210 and/or 9.92.060 shall not be considered to be under sentence of a felony for the purposes of this subsection.

"(2) Whenever a person is convicted of two or more offenses which arise from a single act or omission, the sentences imposed therefor shall run concurrently, unless the court, in pronouncing sentence, expressly orders the service of said sentences to be consecutive.

"(3) In all other cases, whenever a person is convicted of two or more offenses arising from separate and distinct acts or omissions, and not otherwise governed by the provisions of subsections (1) and (2) of this section, the sentences imposed therefor shall run consecutively, *unless the court, in pronouncing the second or other subsequent sentences, expressly orders concurrent service thereof*." (Italics ours.)

*custody* he shall be deemed an escapee and a fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be a part of his term.

(Italics ours.) RCW 9.95.130. The Board interprets the statute to mean that a parolee is an escapee and a fugitive from justice until he is returned to the custody of *Washington State* authorities. This is so, the Board contends, even when the offender is in out-of-state police custody and serving time in a penal institution.

No Washington court has interpreted the term "custody" as used in the context of RCW 9.95.130.[6] In ascertaining the meaning of a particular word as used in a statute, the court must consider both the statute's subject matter and the context in which the word is used. *State v. Rhodes*, 58 Wn. App. 913, 920, 795 P.2d 724 (1990). When the statute does not define the word in question, the court may look to the word's ordinary dictionary definition to aid its interpretation. *Rhodes*, 58 Wn. App. at 917. We are to avoid an interpretation that results in unlikely, strained or absurd consequences. *State v. Moore*, 63 Wn. App. 466, 471, 820 P.2d 59 (1991).

The purpose of RCW 9.95.130 clearly is to discourage offenders from violating their parole. Thus, it ensures that parole violators will not be rewarded for their misconduct by receiving credit toward their prison terms for time spent as an escapee or fugitive from justice. The Board gives no reason why this statutory purpose would be furthered by also disallowing credit for time served in out-of-state incarceration when the trial court has ordered that a Washington sentence run concurrently with an out-of-state

---

[6]The issue of whether an escapee should receive credit toward her original sentence on a drug-related conviction for time served for the crime of escape was answered in the negative in *Wickert v. Board of Prison Terms & Paroles*, 13 Wn. App. 917, 538 P.2d 826 (1975). Unlike the present case, the trial court there did not order that the escape and original sentence should run concurrently. The court determined that RCW 9.92.080(3) applied, which required that the sentences, arising from separate and distinct acts, were to run consecutively absent an express court order that they run concurrently. *Wickert*, 13 Wn. App. at 919-21.

sentence the offender was serving at the time he was sentenced in Washington. It simply argues that, because other criminal statutory provisions refer to "custody" as "Washington State custody", this court must construe "custody" narrowly to mean only "Washington State custody".

For example, the Board observes that convicted felons must be imprisoned in state correctional institutions. *See* RCW 9A.20.020, .021. The Board also relies on provisions giving the Board power to set minimum terms, RCW 9.95-.030, .040, and revoke and redetermine those terms, RCW 9.95.080, for pre-SRA offenders in the custody of DOC. While RCW 9A.20.020 and .021 may limit the sentencing court's discretion in fixing the place of confinement for certain types of crimes, these provisions do not imply that "custody" means only "Washington State custody" in cases where the court has ordered that a Washington sentence be served concurrently with an out-of-state sentence.

In the context of RCW 9.95.130, the term "custody" must be construed to require the Board to effectuate the court's order in this case that the sentences run concurrently. Under the Board's interpretation of "custody", however, a parole violator in Pepperling's situation would not be entitled to have his sentences run concurrently. There is no evidence that the Legislature intended this result.[7] Nor has the Board articulated any policy reason to support its interpretation. We therefore look to the ordinary dictionary definition as an aid in our interpretation of the term. Webster defines "custody" as the "immediate charge and control (as over a ward or a suspect) exercised by a person or an authority". *Webster's Ninth New Collegiate Dictionary* 318 (1986). Under this definition, Pepperling was taken into "custody" when he was returned to the Montana authorities.

---

[7]If the Legislature wished to do so, it could easily specify that time loss is calculated from the time of revocation to the offender's return to the custody of DOC. (See discussion, *infra*, of *Browning v. Michigan Dep't of Corrections*, 385 Mich. 179, 188 N.W.2d 552 (1971)).

The Michigan Supreme Court analyzed the same issue in *Browning v. Michigan Dep't of Corrections*, 385 Mich. 179, 188 N.W.2d 552 (1971). There, the petitioner was originally sentenced to a maximum 10-year prison term in Michigan. After serving 2 years in prison, he was paroled to Georgia pursuant to the Interstate Parole Compact.[8] While on parole in Georgia, Browning committed other offenses. After Georgia authorities released Browning, Michigan authorities revoked his parole and set a new minimum sentence. He was then paroled again, this time to Illinois, where he committed another offense. After serving his sentence in Illinois, he was paroled and again placed in the custody of Michigan authorities. The Michigan parole board revoked his parole for a second time, and declared that he had accumulated almost 8 years of "dead time".[9] Browning challenged the Board's calculation, arguing that he was entitled to credit toward his 10-year maximum sentence in Michigan for the time periods during which he was incarcerated in Georgia and Illinois.

In determining whether Browning was entitled to credit, the court analyzed Michigan's "dead time" statute. The statute provided that a parole violator could not receive credit toward his sentence from the time he absconded from supervision until the date of his "availability for return to any penal institution under control of the Commission." *Browning*, 385 Mich. at 187-88. The court focused its analysis on the meaning of "date of availability". It first observed that the Michigan criminal code evinced a clear legislative policy in favor of concurrent sentences. Unlike RCW 9.92.080, the Michigan sentencing scheme presumed that sentences were concurrent unless the court ordered that they run consecutively. Mich. Comp. Laws Ann. § 791.238; *Brown-*

---

[8]Under the Interstate Parole Compact, the signatory states agree to assume the duty of supervising the offender once he is paroled to their state. *Browning*, 385 Mich. at 184. Washington and Montana are signatories to a similar agreement. *See* RCW 72.74.020.

[9]"Dead time" is synonymous with the term "time loss" as used by DOC in this case.

*ing,* at 186-88. Second, the court recognized the inequity of disallowing credit only for out-of-state parolees. While a prisoner paroled within Michigan who later violated his parole would be immediately available for return to Michigan authorities, an offender paroled out-of-state who violates his parole would not be available until he completed his sentence imposed by that state. Thus, the court concluded, "[f]or all practical purposes, the arrest of an in-state parolee terminates his dead time." 385 Mich. at 188. It explained:

> In practice, the suspension of the Michigan sentence until the service of the foreign sovereign's term of imprisonment effectually imposes consecutive sentences. One does not commence until the other has expired.
> Construed to operate in this manner, the "dead time" statute not only violates the requirement that consecutive sentences must be based upon express statutory provisions (*[In re Carey,* [372 Mich. 378,] at 380, [126 N.W.2d 727 (1964)]), but also invidiously sub-classifies the out-state parolee solely upon the basis of geography. The beneficent and rehabilitative purposes of the [Interstate Parole] Compact do not require this discrimination and the dead time statute so strictly construed would constitute an unreasonable classification violative of equal protection guarantees. *Fox* v. *Michigan Employment Security Commission* (1967), 379 Mich. 579, [153 N.W.2d 644]. Further, the statute — if viewed in this manner — contravenes the manifested legislative intent against consecutive sentences.

385 Mich. at 188-89.

In light of its equal protection concern and the Legislature's express policy in favor of concurrent sentences, the *Browning* court concluded that the phrase "date of availability" meant "actual *or* constructive availability for return to the Michigan penal system." 385 Mich. at 189. Because the petitioner was constructively available for return to Michigan authorities when he was arrested and taken into custody by out-of-state authorities, he was entitled to credit for time served in Georgia and Illinois. 385 Mich. at 188-89.

In the present case, the trial court expressly ordered that Pepperling's sentences run concurrently and, under the Board's interpretation of our "dead time" statute, out-of-state parolees would be treated differently from similarly

situated in-state parolees solely on the basis of their geographic location. Thus, the same concerns voiced by the Michigan court are present here. Under the reasoning set forth in *Browning*, we too conclude that a prisoner in the custody of out-of-state authorities is in "custody" for purposes of RCW 9.95.130.

The Board cites several federal cases in support of its position. They are all distinguishable either because the sentences in the federal cases ran consecutively or because the United States Parole Commission (Commission) has powers the Washington Legislature has not conferred on the Board. In *Tijerina v. Thornburgh*, 884 F.2d 861 (5th Cir. 1989), the petitioner sought credit against his 12-year prison sentence for time served for an offense he committed while on parole from his first sentence. He challenged the Commission's rejection of the District Court's recommendation that the sentences be served concurrently. The court upheld the Commission's decision, stating that under 18 U.S.C. § 4210(b)(2), the Commission has sole discretion to determine whether the parole violator's term will run concurrently or consecutively with a second prison sentence imposed for a crime committed while on parole. Further, the court observed, the Commission has authority to contravene a court order requiring concurrent prison terms for the parole violation and second crime. *Tijerina*, 884 F.2d at 864-65. Unlike the situation in *Tijerina*, there is no Washington statute that confers upon the Board exclusive authority to determine whether a former parolee should serve his parole violator terms concurrently or consecutively. The trial court imposed a concurrent sentence and the Board concedes, as it must, that it has no power to run Pepperling's sentences consecutively.[10]

---

[10]*Deveny v. United States Board of Parole*, 565 F.2d 875 (5th Cir. 1978) is distinguishable for the same reason as *Tijerina*. There, the United States Attorney General had originally accepted the District Court's recommendation that Deveny's federal sentence be served concurrently with his Texas sentence. While on parole from both sentences, Deveny reoffended in Georgia, and the United States Parole Board issued a detainer warrant. Deveny sought dismissal

The Board contends that another federal case, *Raines v. United States Parole Comm'n*, 829 F.2d 840 (9th Cir. 1987), is directly on point and should control here. Raines argued that he should have been allowed credit toward his federal sentence for time spent in an Oregon prison. A federal judge had ordered that the sentences be served concurrently. However, as noted by the *Tijerina* court, the Commission has authority by statute to decide whether sentences are to be served concurrently or consecutively. The court dismissed Raines's contention with this limited analysis:

> Raines's claim has intuitive appeal. However, there is no statutory provision that accords a prisoner credit against a federal sentence for time served in a state prison on a state charge.

*Raines*, 829 F.2d at 843. Because of the difference between the federal statutes governing the authority of the Commission and the Washington statutes limiting the authority of the Board, this analysis is unpersuasive in Washington.

*Weeks v. Quinlan*, 838 F.2d 41 (2d Cir. 1988) is distinguishable on the same basis as *Tijerina* and *Raines*. In *Weeks*, the court denied the petitioner's claim that he was entitled to credit against his federal sentence for 25 months served in a Virginia state prison for the crimes of distribution and possession of heroin. The federal court had ordered that the state sentence for distribution be served concurrently with the federal term. However, the state sentence for possession was to run consecutively to the federal sentence. Again, the basis for the Circuit Court's decision was the Commission's exclusive statutory authority to define the conditions of parole and decide whether an offender will get

---

of the detainer, arguing that the time left on his federal sentence should be reduced by the time he served in Texas prison. The court disagreed, stating that two conditions for credit had not been met. First, the Board had not yet revoked Deveny's parole. Second, the Board had not redesignated the state penitentiary as the prison in which Deveny would serve the unexpired portion of his federal sentence. *Deveny*, 565 F.2d at 877. Here, by contrast, the Board has revoked Pepperling's parole. Further, the Board does not have the same authority as the equivalent federal body to determine whether Pepperling's unexpired sentence will be concurrent with his Montana sentence.

credit for time served in state prison after his release from federal prison. *Weeks*, 838 F.2d at 44, 47. As noted above, the Board in Washington has no equivalent authority.

The Board, however, focuses on another rationale for the result in *Weeks*. The *Weeks* court concluded that, although he was incarcerated in state prison, Weeks was nevertheless "on parole" for purposes of computing his dead time. The court reasoned that, because the federal authorities had no physical control over Weeks while he was in the custody of state prison officials, and because the state was a separate sovereign, "the subsequent confinement in a state prison cannot be considered a continuation of federal confinement." 838 F.2d at 46. While we express no opinion on the applicability of this reasoning where sentences are *consecutive*, we must reject it here. To so hold would be to effectively negate the trial court's order that Pepperling's Washington and Montana sentences run concurrently. The time he served on his parole violation in Montana is part of the very sentence the trial court ordered to run concurrently with his Washington sentence.

In light of the sentencing judge's express intent that Pepperling's Montana and Washington prison sentences be served concurrently, the Board must give him credit toward his 20-year maximum sentence in Washington for the time he served in Montana as a result of his parole violation.[11] Because we hold that Pepperling was in "custody" while serving his parole violator term in Montana, the Board is precluded from adding time to his maximum term as if he

---

[11]Contrary to Pepperling's claim, our holding does not effectively punish him twice for violating his parole. Under RCW 9.95.009(2), the Board has authority to set his minimum term after a parole violation. *In re Chavez*, 56 Wn. App. 672, 784 P.2d 1298 (1990). In setting a new minimum term, the Board must consider the purposes, standards and ranges of the SRA. If the Board imposes a sentence for a parole violation which exceeds the standard range for the offense, it must give written reasons for doing so. *Chavez*, 56 Wn. App. at 674-75; *In re Storseth*, 51 Wn. App. 26, 30-31, 751 P.2d 1217 (1988). Thus, the Board has discretion to decide the length of Pepperling's minimum term, so long as it comports with SRA guidelines and does not exceed the maximum term ordered by the trial judge at the time of his conviction. *See In re Paschke*, 57 Wn. App. 907, 911-12, 790 P.2d 1250 (1990).

were on abscond status during his Montana incarceration. If we were to permit the Board to so extend Pepperling's maximum sentence, this would frustrate the intent of the sentencing judge who had the sole authority to determine, under the pre-SRA sentencing scheme, whether he would serve the sentences concurrently or consecutively.

WEBSTER, A.C.J., and FORREST, J., concur.

After modification, further reconsideration denied May 27, 1992.